Argued January 22; affirmed March 8; mandate issued May 6,
1932.

PORTLAND VAN & STORAGE CO. ET AL. *v.*
HOSS, SECRETARY OF STATE, ET AL.

(9 P. (2d) 122)

*Robert F. Maguire,* of Portland, for appellant.

*W. S. Levens,* Assistant Attorney General (I. H. Van Winkle, Attorney General, and Miles H. McKey, Assistant Attorney General, on the brief), for respondents.

ROSSMAN, J. The purpose of this suit is to restrain the defendants from applying to the plaintiffs 1929 Session Laws, chapter 394, page 503 (sections

55-1301–55-1340, Oregon Code 1930), on the ground principally that when the provisions of that act are applied to the plaintiffs they are deprived of rights protected by the federal and state constitutions. The plaintiffs, fifty in number, describe themselves thus:

"Each of the plaintiffs is the owner and operator of various and sundry motor trucks, trailers and semi-trailers, each of which vehicles is equipped with pneumatic tires * * *. Plaintiffs from time to time in the regular course of their business, carry by means of said motor vehicles, over the roads and highways of the State of Oregon and more than three miles beyond the boundaries of incorporated cities and towns in which such carriage originates, property for particular persons, firms and corporations, under special and individual contracts, under and by the terms of which they receive compensation for such services. None of these plaintiffs, however, operates said motor vehicles as common carriers of either persons or property. * * * The plaintiff Portland Van & Storage Co., in the general course of its business, enters into individual contracts with divers persons, firms and corporations to enter into and upon their premises and to gather together and pack personal property of various kinds, such as household goods and office furniture, furnishings, files and the like, and to load the same into its motor vehicles or moving vans and to carry such personal property over the roads, streets and highways of the State of Oregon. For such service the Portland Van & Storage Co. receives compensation in a lump sum. The plaintiff Morrison Trucking Co., from time to time moves logs and various products by means of its motor vehicles over the roads and highways of the state, and this work and service is done under special and individual agreements and contracts wherein the said plaintiff enters upon the lands of others, falls, bucks and logs, standing and down timber thereon and transports the logs and forest products from said lands over the roads and highways of the state to the logging streams, rivers, railroads and mills

wherein further carriage or transportation is undertaken by others. The said plaintiff also, from time to time, in the regular course of its business, enters upon the performance of contracts with the State Highway Commission of the State of Oregon and with various counties and municipal corporations of the state, for the construction, maintenance, or repairs of roads, highways and streets, wherein and whereby it constructs, maintains and repairs such roads, streets, or highways, furnishing material and labor for such work, and hauling road materials to the place of work. Under such contracts the said plaintiff receives compensation * * *. The various other plaintiffs are engaged in classes of work of a kind and character similar to that of the Portland Van & Storage Company and the Morrison Trucking Co., heretofore described, and in addition thereto move and carry over the highways of the state, property of others with whom they have entered into special and individual contracts and agreements for such carriage, and for which service they receive compensation. None of these plaintiffs is a common carrier of persons or property, and none of these plaintiffs owns, controls, operates or manages any motor trucks or vehicles used in the business of transporting persons or property or either, for money or property of value, of or for the general public; but each of these plaintiffs does own, control and operate the motor vehicles heretofore mentioned and does move and carry property by means of said motor vehicles over the roads and highways of this state for a distance more than three miles beyond the boundaries and limits of the incorporated city or town in which such movement or carriage originates, and such movement or carriage is done under special or individual contracts and agreements with other individuals, firms and corporations, and not for the general public, and for such services these plaintiffs do each receive money and/or property of value."

Continuing, the complaint alleges:

"That there are large numbers of persons, firms, and corporations residents of and doing business in

the State of Oregon, operating large numbers of motor vehicles of the same kind, class, condition, and equipment, and of the same respective weights as those operated by these plaintiffs, and engaged in the moving and the carriage of property over the roads, streets, and highways of the State of Oregon, and traveling at the same and greater rates of speed, and being operated the same and a greater number of miles per year upon and over the street, roads and highways of the State of Oregon, and causing the same and greater damage and wear thereto and thereof, and requiring the same or greater regulation and supervision which, because the owners thereof do not make or receive specific charges or compensation for such moving or carriage, or because they are engaged in the moving and carriage of their own goods and merchandise, or in the moving, carriage, and delivery of goods, wares and merchandise and other property sold to their customers, are not called upon by the said defendant Hal E. Hoss to pay said additional annual license tax fees, and who are thereby granted privileges and immunities from said tax, and the privilege of the use of the roads and highways upon other and different terms than these plaintiffs, who are citizens, residents, and inhabitants of the State of Oregon.''

1929 Session Laws, chapter 394, page 503, subjects to the provisions and requirements of that act those carriers by motor vehicles which are expressly defined by the act itself. Of the several classifications of the act, the plaintiffs have called to our attention the two following, both being codified in section 55-1301, Oregon Code 1930:

''Contract Haulers. The term 'contract haulers' when used in this act, means any person, persons or corporation engaged in the transportation for compensation or hire of persons and/or property for a particular person, persons or corporation to or from a particular place or places under a special or individ-

ual agreement or agreements and not operating as a common carrier as the term is defined in this act, and not operating exclusively within the corporate limits of an incorporated city or town, or exclusively within three miles of the boundaries of such city or town.

"Commercial Carrier. The term 'commercial carrier,' when used in this act, means any person, persons or corporation engaged in the transportation or delivery of goods, wares, merchandise, materials and articles of commerce to wholesale or retail merchants or dealers not exclusively within the boundaries of incorporated cities or towns of the State of Oregon, or exclusively within three miles of the boundaries of such city or town; provided, that the term 'commercial carrier' shall not be deemed to include the delivery to market of the products of husbandry by the grower or owner thereof, or his employe, nor the transportation of freight or passengers by motor vehicles in rural communities not done on a commercial basis and not done for the general public, nor commercial salesmen, to wit: Persons actually engaged as traveling or city salesmen, buyers, sellers, credit men and wholesale businesses of a legitimate nature, or manufacturers selling to dealers to be sold again, or traveling adjudicators or traveling auditors for wholesale and manufacturing houses, none of whom are [is] regularly engaged in the delivery of goods."

The other carriers subject to the act are "motor carriers" which, as defined by the act, include all operators engaged "in the business of motor transportation of and for the general public and not operating exclusively within the limits of an incorporated city."

Section 5 of the act (codified as section 55-1305, Oregon Code 1930) renders it unlawful for any motor carrier, contract hauler or commercial carrier to operate vehicles in motor transportation without obtaining

from the Secretary of State a license. Section 15 of the act (being section 55-1315, Oregon Code 1930) provides:

"Every motor carrier, contract hauler and commercial carrier subject to this act shall pay to the State of Oregon an annual charge for the maintenance, repair and reconstruction of public highways in this state and for the purpose of defraying the expenses of administration of this act and the expenses of regulation of the business of motor transportation in this state and as compensation for the use of said highways."

The fee charged is dependent upon the amount of the license tax fee exacted upon the registration of the carrier's vehicles.

To the complaint which alleged the foregoing facts, and which also pointed out the provisions of the federal and state constitutions which the plaintiffs claim are infringed by the above mentioned statute, the circuit court sustained the defendants' demurrer. From the resulting decree, the plaintiffs have appealed.

The plaintiffs argue in their brief the following propositions: (1) The plaintiffs are not contract haulers as defined by the statute, because they are not engaged in doing business for the general public. (2) A law which imposes upon one group an additional license tax fee and exempts others making like use of the highways with the same kind of vehicles, to the same extent, is unconstitutional as a grant of special privileges to the last group. (3) In the absence of a justification for the tax as one warranted by the difference in the amount and character of the use of the highways, the tax can be justified as an occupation one only. (4) If it is an occupation tax then this law is unjust, arbitrary, and a grant of special privileges

and immunities to large numbers of persons occupying the same position and in the same condition as the plaintiffs, and therefore unconstitutional. (5) The enactment is special legislation imposing a tax for rate purposes upon certain groups of motor operators but not upon others making substantially the same use of the highways.

In support of the first of the above propositions, the plaintiffs call to our attention the fact that when the definitions of "transportation for compensation" and "carriers by motor," as set forth in the act, are applied to the term "contract haulers" the meaning of that term is not free from doubt, and that it becomes possible to construe it to mean a carrier who holds himself out to the service of the general public. We are not prepared to say that this criticism is entirely unwarranted. However, it would be remarkable to find an act of the length of this one, dealing with many subjects of a technical nature, expressed in such perfect form that search for language capable of ambiguous construction should go entirely unrewarded. The definition of "contract haulers" as expressed in the above quoted language is free from any substantial doubt. It is possible to produce uncertainty when the above mentioned definitions are resorted to. It seems to us, however, that this method of producing uncertainty is labored. It begins with a definition which is free from ambiguity and by employing the definition of "transportation for compensation" and then resorting to the act's definition of a "carrier by motor" produces color for the contention that a contract hauler is a motor carrier (common carrier). But the definition of the latter term as set forth in the act, together with the entire contents of the act itself, make it entirely clear that the legislature did not intend to

assign to the two terms (motor carrier and contract hauler) the same meaning. It seems evident that courts should not apply rules of construction and dictionaries accompanying acts for the purpose of creating uncertainty, nor should a court find it difficult to understand language which laymen are readily able to comprehend. We conclude that the term "contract haulers" is free from any serious doubt. The plaintiffs' principal criticism is directed against the act's definition of the term "commercial carrier." However, they do not claim that they are commercial carriers and the defendants have not classified them as such. The business in which they are engaged, as described in the complaint, does not bring them within that portion of the act's definition of commercial carrier not criticized by the plaintiffs. The fundamental difference between a contract hauler and a commercial carrier is that the former is engaged in the contract transportation business, whereas the latter renders transportation facilities as an incident to the business in which he is engaged. Since the contract hauler receives compensation from the individual for whom he renders his service, while the commercial carrier does not, a substantial difference exists between the two individuals, as we shall later endeavor to point out. If our conclusion is warranted that the above constitute a substantial difference, then no judicial interference is justifiable with what the legislature has done, for legislative classification is never invalid when it is based upon something substantial and is not arbitrary and unreasonable: *State v. Kozer,* 116 Or. 581 (242 P. 621); *Standard Lumber Co. v. Pierce,* 112 Or. 314 (228 P. 812). This leaves for determination the question whether a distinction of substance exists between the plaintiffs and those who are excluded from the defini-

tions of "contract haulers" and "commercial carriers" by the provisos which conclude each of those two definitions. The excepted individuals are: (1) contract haulers who operate within the boundaries of cities and the three-mile adjacent territory; (2) the following carriers who haul without compensation: (a) farmers; (b) occasional rural carriers; (c) various classes of commercial men "none of whom are (is) regularly engaged in the delivery of goods."

It will be observed from the description of the plaintiffs' businesses, as set forth in their complaint, that they operate freight-carrying trucks over the streets of our cities and the highways of this state, and make charges for the services rendered. Evidently a very substantial part of the transportation plant of each of the plaintiffs consists of these roadways which constitute the roadbed of their transportation facilities. Without streets and highways the business of these plaintiffs and the income which they receive would be impossible. These costly improvements have not been constructed out of the taxes paid by the plaintiffs alone, but from the contributions made by the entire public. Yet the operation of heavy trucks subjects the roadway to severe wear, and unless constant repairs are made the streets and highways will become impassable. Likewise, the operation of powerful trucks with their broad, projecting bodies, laden with heavy loads of freight, readily becomes a menace to the safety of others who are traveling upon the same pavement unless the operation of the trucks is supervised by public officers. Thus appears another item of expense which must somehow be discharged.

The above circumstances readily suggest that the business of transporting freight for compensation upon the state's highways may properly be made the

subject of an occupation tax. A law requiring a license is primarily intended to regulate a particular calling or business, and not to raise revenue, while an occupation tax is primarily intended to raise revenue by that method of taxation: *Provo City v. Provo Meat & Packing Co.,* 49 Utah 528 (165 P. 477, Ann. Cas. 1918D, 530). A property tax constitutes a burden upon business to the extent of the tax, but an occupation tax with its ancillary provisions, if not paid, may bring to an end the business altogether: *In re Skelton Lead & Zinc Co.'s Gross Production Tax,* 81 Okl. 134 (197 P. 495). Those who employ the public thoroughfares and other conveniences supplied by the general public as the places for plying their vocations are peculiarly subject to occupation taxes: *Scott v. Hart,* 128 Miss. 353 (91 So. 17). The above circumstances, together with the plaintiffs' attitude, convince us that this act imposes an excise in the nature of an occupation tax. The plaintiffs do not question the power of the legislature to impose such a tax and the decisions of this court warrant their attitude: *Standard Lumber Co. v. Pierce,* supra; *Kellaher v. City of Portland,* 57 Or. 575 (110 P. 492, 112 P. 1076); *State v. Wright,* 53 Or. 344 (100 P. 296, 21 L. R. A. (N. S.) 349); *Lent v. Portland,* 42 Or. 488 (71 P. 645).

The fact that the preamble to 1921 Session Laws, chapter 412, page 807, recites a legislative belief that the speed, weight and distance traveled by a motor vehicle is so proportional to the wear imposed by it upon the roadbed that the car's just contribution towards the maintenance of our highway system may properly be exacted by a tax upon the fuel consumed, in our opinion, could not prevent the 1929 session from imposing this occupation tax. The preamble of a statute is a recital of the motives and inducements which

led to its enactment. It is not an essential part of the act and neither enlarges nor confers powers: 25 R. C. L., Statutes, p. 1030, § 266. The preamble cannot legislate away the powers of the legislature nor bind its future course so as to impair its continuing power to legislate: Lewis' Sutherland Statutory Construction (2d Ed.) § 342. It, therefore, seems evident that although the 1921 session may have entertained the beliefs recited in the preamble to the aforementioned statute, yet all subsequent sessions were at libery to entertain beliefs at variance therewith.

The plaintiffs contend that if this act is construed as one which imposes an occupation tax then it violates those provisions of constitutional law which guarantee the equal protection of the law and demand uniformity of taxation because it imposes the tax upon them but omits those whom we have previously mentioned. It will be observed that the omitted persons may be divided into two classes: (1) owners of trucks who make no direct charge for their services; and (2) carriers who do or do not make a charge but do not go beyond three miles of the city's boundaries.

The following differences may be noted between the circumstances of the plaintiffs and the above two classes of persons. The plaintiffs charge for their services and contract for the hauling performed by them. Freight haulers who confine their services to the cities' streets are not employing roadways built by the state. The very substantial license fees paid for their registration and the gasoline tax exacted by the 1921 Session Laws, chapter 412, defray no part of the cost of the improvement of the cities' streets, and are expended for roadways outside of the municipalities' boundaries; therefore, this class of trucks receives no return from its registration fee except upon its occa-

sional excursion into the three-mile adjacent territory: *State v. Kozer, supra.* If those haulers who confine their services to the city streets should be compelled to pay this additional fee, they would thereby be subjected to another charge which would bring to them practically no return because the act proposes to expend the returns upon the state highways. Trucks with their broad, projecting bodies are a greater menace to the safety of others upon the narrow state highways than upon the broad city streets, and therefore require additional police supervision. We feel justified in entertaining the belief that ordinarily a truck operating in a city is used for only eight hours out of the twenty-four, and thus receives only eight hours per day value out of its state license, whereas the trucks which engage in long distance hauling frequently operate for more than eight hours per day and are, therefore, receiving extra service each twenty-four hours out of the license fee paid to the state. An individual who operates a delivery system as incidental to his business ordinarily has a large investment in building, merchandise, etc., which is subject to general taxation, and he thus makes substantial contributions to the public income; but one who owns nothing but a delivery system, which is operated for hire, escapes the burden just mentioned and, since his motor vehicles are exempted from taxation, makes no contribution to the public purse. These, and other similar differences which readily come to mind, show quite clearly that a substantial difference exists between the truck haulers who are subject to this tax and the other classes of individuals described in the complaint who are not subject to the tax.

■ Our constitution provides: "All taxation shall be uniform on the same class of subjects within the ter-

ritorial limits of the authority levying the tax"
(Article I, section 32). "The legislative assembly shall,
and the people through the initiative may, provide by
law uniform rules of assessment and taxation. All
taxes shall be levied and collected under general laws
operating uniformly throughout the state" (Article
IX, section 1). Constitutions requiring taxation to be
equal and uniform apply only to taxes on polls and
property and have no reference to excises. But if we
assume, as we deem we must, that the above quoted
constitutional provision demands uniformity in the
imposition of excises so that the burden imposed will
fall alike upon all persons who are in substantially the
same situation, then we believe that this statute is not
subject to criticism. "Exact equality in the tax or in
the classification cannot be attained. That is impos-
sible. But it is sufficient if made on a reasonable basis,
and includes all within the class, and is not merely ar-
bitrary.": *Kellaher v. City of Portland,* supra. In
*State v. Kozer,* supra, this court said: "Exact equality
is not possible. Practical equality is constitutional
equality. The human mind has not yet been able to
devise any scheme of taxation which will operate with
unerring certainty and equality to all situations that
arise."

██ Taxation is a very practical problem. It deals
with needs and subjects of taxation of a practical nature.
Complete equality and uniformity in the imposition of
the tax burden must remain an ideal until human in-
genuity can perfectly appraise the myriad differences
—some readily discernible, others obscure, but none the
less real—between the vast variety of subjects of taxa-
tion. Since the review of legislative wisdom is a matter
for executive veto, but not for judicial action, the
courts are bound to assume that the legislature has

paid due heed to all economic considerations affecting classifications and yield full effect to the tax-imposing statute, unless it is impossible to discern any substantial differences between the occupations separately classified. Differences need not be great unless a purpose is revealed to destroy one class or unreasonably hamper it for the benefit of another group circumstanced substantially similar to the unfavored group.

Numerous decisions could readily be marshalled together in support of the statement that a legislative classification of vehicle owners, determined upon the factor of whether a charge is made for the hauling upon the public highways, is not an arbitrary one but is one based upon a difference of substance. Illustrative cases are *Jackson v. Neff,* 64 Fla. 326 (60 So. 350), and *State v. Zimmerman,* 181 Wis. 552 (196 N. W. 848).

The justification for permitting the city truck to operate within the adjacent three-mile zone was well developed in *State v. Kozer,* supra, and we find no occasion for regarding that privilege as one that defeats the legislative classification. The same decision also points out a substantial reason for exempting the farmer who hauls to market the yield of his soil from being classified alongside of those who regularly employ the roadways for commercial hauling. An even better reason exists for classifying him apart from contract haulers.

■ ■ Responding to the demand of constitutional law that the courts must recognize in the legislative power a very wide discretion in classifying trades, callings and businesses which may be subjected to special forms of taxation through an excise (*State Board of Tax Commissioners v. Jackson,* 283, U. S. 527 (51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464)), it is our opinion that the legislature's act, which placed the plain-

tiffs in a separate classification because they make a charge for their services in hauling freight upon the public roadways, shows no abuse of discretion, but is a reasonable classification.

Having construed this challenged statute in the above manner as one of uniform application upon those within its classifications, it follows that, in our opinion, it is not a special tax law within the purview of Article IV, section 23, subdivision 10, Oregon Constitution.

We have not reviewed herein the numerous authorities cited in the able brief of counsel for the appellants, but we have not omitted consideration of them in our deliberations. Other matters argued in appellants' brief are resolved against them.

It follows that the decree of the circuit court will be affirmed. Costs and disbursements will be allowed to neither party.

BEAN, C. J., RAND and BELT, JJ., concur.