# MARGERY SUSAN THOMAS *v.* COMMISSION

Margery S. Thomas appeared *in propria persona.*

Carl N. Byers, Assistant Attorney General, represented the defendant.

Decision rendered for defendant December 27, 1968.

EDWARD H. HOWELL, Judge.

The Polk County Assessor and the State Tax Commission denied a special farm use assessment under

ORS 308.370① to 14 acres of plaintiff's land and plaintiff appealed to this court. The assessment date involved is January 1, 1967.

The 14-acre tract on which the special assessment was denied was purchased by plaintiff in 1961 for $15,130 and lies within a farm use zone. Until January 1, 1967, the assessor had given the tract a farm use classification and assessed it under the special provisions of ORS 308.370, *supra*. On January 1, 1967, this farm use classification was removed and the property valued at $17,500. Upon appeal to the board of equalization this valuation was reduced to $15,000.

On December 31, 1966, plaintiff purchased an additional 24 acres of land contiguous to the 14-acre tract and also within the farm use zone. The contract for this purchase, however, was not recorded until December, 1967. The parties agree that this tract was receiving the special assessment as farm land on January 1, 1967.②

The 14-acre parcel and the 24-acre parcel are carried as two separate tax lots. Before plaintiff's purchase the two tracts had been part of a large farm operated by the former owner. The 24-acre parcel was receiving a farm use classification on January 1, 1967, because plaintiff's purchase contract had not been recorded until December, 1967, and the assessor believed the 24 acres were still part of the large farm.

The plaintiff presents three contentions: (1) that

---

① ORS 308.370(1) states:

"(1) Any land which is within a farm use zone established under ORS 215.010 to 215.190 or 227.210 to 227.310, and which is used exclusively for farm use as defined in subsection (2) of ORS 215.203, shall be assessed at its true cash value for farm use and not at the true cash value it would have if applied to other than farm use."

② The 24-acre parcel was also denied a farm use classification for January 1, 1968, but that year is not involved in this suit.

the 14-acre tract by itself was entitled to the farm use classification; (2) that the assessor should have considered both tracts of land together for the purpose of determining the farm use classification; and (3) that she was denied uniformity of assessment on the 14-acre tract as required by Art I, § 32, and Art IX, § 1, of the Oregon Constitution.

The undisputed evidence showed that 11 acres of the 14-acre tract were steep, rocky, and not suitable for cultivation. The remaining 3 acres had been planted to grain since 1961. Plaintiff received no income from these 3 acres as they were farmed by the original owner who did some road grading and mowing of weeds in exchange for the crop.

The only income plaintiff received in 1967 from the 24-acre tract acquired in December of 1966, was $60 to $70 from the sale of one ton of prunes.

To be entitled to the farm use classification allowed by ORS 308.370, *supra,* land must be "used exclusively for farm use." The definition of "farm use" is found in subsection (2) of ORS 215.203[③] which states:

> "(2) As used in this section, 'farm use' means the use of land for raising and harvesting crops or for the feeding, breeding and management of livestock or for dairying or any other agricultural or horticultural use or any combination thereof and includes the preparation of the products raised thereon for man's use and disposal by marketing or otherwise. It includes the construction and use of dwellings and other buildings customarily provided in conjunction with the farm use."

[③] Or L 1967, ch 386, amended ORS 215.203 by further delineating the term "farm use." These amendments and the regulations subsequently enacted by the commission do not apply to the assessment date of January 1, 1967.

Complying with the provisions of ORS 308.380 directing them to enact regulations providing a "more detailed definition of farm use * * * to be used by county assessors in determining entitlement" to the special farm use assessment, the tax commission enacted Reg 308.380 (1965) which listed various factors to be considered by assessors in determining what constitutes a bona fide farming operation.

It is clear that the 14-acre tract is not entitled to a farm use classification whether it is considered separately or as a whole with the larger parcel. According to the plaintiff's own witness, 11 of the 14 acres are not suitable for cultivation. The remaining 3 acres have yielded nothing for plaintiff except the minor road grading and mowing by the former owner in exchange for the crop. The eligibility of the 14-acre tract for a farm use classification is not enhanced when considered with the other parcel because, with the exception of harvesting one ton of prunes, no farm use was made of the 24-acre parcel during 1967. (Although as mentioned previously, this parcel had received a farm use classification on January 1, 1967, and is not directly involved herein.)

■ It is true that both parcels were within a farm use zone in Polk County; the 14-acre parcel had received a farm use classification until the assessor changed it on January 1, 1967; the 24-acre parcel had received a farm use classification when it was part of a large farm owned by plaintiff's vendor. However, the fact that two parcels of land had or had not received a farm use classification does not mean that in subsequent years in the hands of a different owner or under different conditions the classification of the lands could not be reviewed and the farm use classification allowed or disallowed as the case may be.

The more difficult question presented by the plaintiff is whether she has been denied uniformity of assessment of the 14-acre tract in violation of Art I, § 32, and Art IX, § 1, of the Oregon Constitution.

ORS 308.370 was enacted by the legislature in 1963 (Or Laws 1963, ch 577). It was the obvious intention of the legislature in enacting this statute and other farm valuation statutes that farm property which met the statutory qualifications should be valued on a basis of farm use and not some other highest and best use.[①]

The Polk County Assessor testified that before he started a review and study of lands within a farm use zone under ORS 308.370, if land was within a farm use zone it was given a farm use classification. This was improper because ORS 308.370 requires not only that the land involved be within a farm use zone but that it also be "used exclusively for farm use." By January 1, 1967, the assessor had reviewed and reclassified 35 separate ownerships, including plaintiff's 14 acres, as nonfarm use lands. By January 1, 1968, he had completed the reclassification of an additional 300 parcels which had received the farm use classification on January 1, 1967, and reclassified them as nonfarm use lands for January 1, 1968.

Relative uniformity of assessment and taxation, not absolute uniformity, is required by the Oregon Constitution and statutes. *Robinson v. State Tax Com.,* 216 Or 532, 339 P2d 432 (1959); *Garbade and Boynton v. City of Portland,* 188 Or 158, 214 P2d 1000 (1950); *Appeal of Kliks et al,* 158 Or 669, 76 P2d 974 (1938).

In *Robinson v. State Tax Com., supra,* the taxpayer owned an office building which was correctly assessed

---

[①] See Carlisle B. Roberts, *The Taxation of Farm Land in Oregon.* 4 Willamette LJ 431 (Fall, 1967).

at true cash value and a competitor's building was grossly undervalued. The taxpayer admitted that with the one exception the valuation of taxpayer's building was comparable and uniform with other buildings of the same class and type. The court held that relative uniformity had been accomplished and that it would be wrong to strike down the correct assessment on plaintiff's property merely because one other building in the area was undervalued.

In *Penn Phillips Lands v. Tax Com.*, 247 Or 380, 430 P2d 349 (1967), the assessor reappraised only the taxpayer's land in the northern half of Lake County for the tax year 1965. All adjacent lands were assessed at their former values. The Supreme Court held the assessor's action discriminated against plaintiff and denied plaintiff the uniformity of assessment and taxation required by the Oregon Constitution. The court stated:

> "While it is generally said that a taxpayer whose assessment complies with the statutes may not claim judicial relief solely because of the failure of the assessor to raise his neighbors' assessments to comply with the same law, there is an exception to this general rule. Arbitrary or systematic discrimination in assessment offends the equal-protection-of-the-law and equal-privileges-and-immunities clauses of the Fourteenth Amendment. *Sioux City Bridge v. Dakota County*, 260 US 441, 43 S Ct 190, 67 L Ed 340, 28 ALR 979 (1923).
>
> "This court has recognized that it would be wrong to strike down a correct assessment merely because one neighbor's property has been underassessed. *Robinson et ux v. State Tax Commission*, 216 Or 532, 538, 339 P2d 432 (1959). But we also noted in the same case that there is a distinction between an assessor's error in overlooking one or two properties with a resulting underassessment

for the few and the situation where one taxpayer is singled out for assessment at full value while all others are left assessed at lesser values. 216 Or at 537, 339 P2d 432."

A very recent case decided by the Supreme Court of Alabama, *M. A. Barnes, Sr. et al v. Dale County Board of Equalization et al*, 283 Ala 437, 218 So2d 150 (1968), also involved the question of uniformity of assessment and arbitrary discrimination in the valuation of the plaintiffs' property. The Dale County Board of Equalization initiated a reappraisal of all property in the county for ad valorem tax purposes and started with the residential property only. Residential values were raised and rural property was not, primarily because of time and personnel limitations. The court sustained the action of the board of equalization, and in finding that the board had not arbitrarily and intentionally discriminated against the plaintiffs, stated:

"Here the record indicates that the Board of Equalization has adopted a plan to equalize the values of all property in Dale County. It has elected to start with residential property. The complainants in this case are, therefore, the first to be affected by the plan to equalize the property assessments in Dale County. But of course it is apparent that the Board cannot instantaneously reassess all property at the same moment. As the trial court noted in the decree rendered in this cause:

" 'While the plan now being followed by the said Board of Equalization, might not be the most ingenious, nor desirable plan for systematic reassessment of all properties within this county, such determination lies within the discretion of this board, and this Court is of the opinion that the board is proceeding in a legal and systematic fashion.'

"We must agree with the trial court that on the state of the record before us, we cannot conclude

that the Board of Equalization is not acting in good faith, and that the record does not support the charge that it is deliberately discriminating against residential property owners in having reassessed their property first."

The court in the above case cited and relied upon *Hamilton v. Adkins,* 250 Ala 557, 35 So2d 183 (1948). There the court was confronted with the question of whether a four-year reappraisal program violated Alabama state uniformity requirements. The court found that it did not because there was no showing that the assessor or board of equalization acted arbitrarily and it was a physical impossibility to reappraise all property in the county at one time. In support of its conclusion that before a state constitution requiring uniformity of assessment and taxation is violated there must be a showing of a systematic and intentional discrimination, the court cited the following cases: *22 Charlotte, Inc. v. City of Detroit,* 294 Mich 275, 293 NW 647, 652 (1940); *City of Roanoke v. Gibson,* 161 Va 342, 170 SE 723, 726 (1933); *Wild Goose Country Club v. Butte County,* 60 Cal App 339 (3rd DC 1922), 212 P 711, 715 (1922); *People v. Orvis et al,* 301 Ill 350, 133 NE 787, 788, 24 ALR 325 (1921); *Newport Mining Co. v. City of Ironwood,* 185 Mich 668, 152 NW 1088, 1095 (1915). The court stated:

"We have pointed out that where there is a review of only a portion of the real estate in a county done in good faith and looking to a plan to equalize values of all property as promptly as possible, this should be considered on the question of intentional discrimination." 35 So2d at 189.

In the instant case it is beyond question that a lack of uniformity in farm use classification existed on January 1, 1967. Many property owners in the zoned

area, including at least one adjacent to the plaintiff, were receiving a farm use classification when they were not entitled to it. The tax commission agreed that a lack of uniformity existed and stated in its opinion and order:

> "* * * The Assessor admitted the lack of uniformity generally respecting farm use assessment and stated that he had just commenced a review which was designed to ultimately remove the exemption for nonfarm use properties which are now valued on the basis of farm use.
>
> "* * * * *
>
> "* * * The examples given by Petitioner indicate that there is now a lack of uniformity in that certain properties which enjoy special assessment for farm use may not be eligible for special assessment. The Assessor admits that such discrepancies exist. Under the circumstances, uniformity is served in each instance where under the Assessor's review, the privilege of special assessment is removed from a property which is not entitled to it."

■ While uniformity may not have been accomplished as far as plaintiff's 14 acres are concerned, it does not amount to the arbitrary or systematic discrimination necessary in this case to constitute a violation of the Oregon Constitution. Mere inequality in valuation does not contravene constitutional provisions. *Hamilton v. Adkins, supra.* Arbitrary or systematic discrimination similar to that in *Penn Phillips, supra,* must be shown. The plaintiff there was the only landowner in all of Northern Lake County to be subjected to special treatment for the tax year 1965. While there was no evidence in *Penn Phillips* that the assessor deliberately and intentionally singled out the plaintiff for special treatment, the effect was the same.

■ One of the factors to be considered when dis-

crimination is alleged is whether the review of only a portion of the real property in a county was done in good faith looking toward a plan to equalize values of all property as promptly as possible. *Hamilton v. Adkins, supra.*

In 1966 the Polk County Assessor started his review and study of whether lands within a farm use zone were being used exclusively for farm use and therefore entitled to the farm use classification which they had been receiving. By January 1, 1967, he removed 35 properties from the farm use classification, including plaintiff's 14 acres. He testified that he continued the study during 1967 as time and personnel permitted and by January 1, 1968, had removed another 300 properties from the special farm use classification.

While many inequities existed in farm use classification in this area of Polk County as of January 1, 1967, the assessor was acting in good faith in reviewing the classifications and removing the unqualified properties as soon as time and circumstances permitted. This negates the existence of arbitrary or systematic discrimination in the elimination of plaintiff's property from the farm use classification.

"In short taxing authorities must commence somewhere in the county with some class of taxpayer in order to equalize the entire county." *Hamilton v. Adkins,* 35 So2d at 190.

The land involved was not entitled to a farm use classification as of January 1, 1967, and the order of the tax commission is affirmed.