H. C. VOGLER, JR. and PEARL VOGLER *v.*
DEPARTMENT OF REVENUE

Wendell Gronso, Cramer & Gronso, Burns, represented plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered March 8, 1971.

Petition for rehearing denied, April 13, 1971.

CARLISLE B. ROBERTS, Judge.

The plaintiffs appeal from the Department of Revenue's Order No. VL 69-522 which affirmed the value found by the assessor of 2,280 acres of Harney County sagebrush land as of January 1, 1969.

The land involved in this appeal is broken into 14 widely scattered tax lots, the sizes varying from 60 acres to 532 acres. All the land is dry. The testimony would indicate that it is out of the ordinary in its area in that, beginning in 1966 or 1967, all of the lots have been cleared of sagebrush and planted to ryegrass.

The testimony also showed that the land immediately adjoining most of the plaintiffs' tax lots, although generally identical in character except for brush cutting and seeding, had been assessed at

amounts varying from $6 to $31 per acre *less* than the plaintiffs' property, as shown below:

| Tax Lot | Acres | Assessor's Value Per Acre | Assessor's Per Acre Value of Contiguous Land |
|---------|-------|---------------------------|----------------------------------------------|
| 147-46 | 150.94 | $45 | $30; 40; 65 |
| 147-43-1 | 80 | 44.5 | 30; 40; 65 |
| 126-20 | 60 | 30 | 21; 35 |
| 149-6-1 | 154.57 | 45 | 14 |
| 149-22 | 79.89 | 45 | 35; 36 |
| 149-1-2 | 532.20 | 32 | 24; 24; 36 |
| 149-70 | 160.00 | 30 | 24 |
| 149-77A | 76.11 | 45 | 35; 36 |
| 149-77A-1 | 76.12 | 45 | 35; 36 |
| 172-10-1 | 318.37 | 45 | 18 |
| 172-11 | 160.00 | 45 | 18 |
| 171-3-12 | 193.11 | 30 | 18 |
| 171-3-21 | 80 | 30 | 24; 36 |
| 171-41 | 158.38 | 30 | 18 |

The plaintiffs contend for a flat $20 per acre of true cash value.

The defendant's principal witness understandably appraised the seeded land of the plaintiffs at a higher value than uncleared land, but the testimony completely fails to support the assumption, in this instance, that the cultivated land had greater value than the natural pasturage surrounding it. The witness based the increased value in part on the cost of clearing the sagebrush at "anywhere from $10 to $30 per acre." He relied on a brief talk "with the County Agent sometime ago and, in fact, he [the County Agent] published a bulletin or booklet on this * * *." The booklet, "Harney County's Land and Its Development," a report prepared by the Harney County Ex-

tension Agents and the Harney County Land Use Committee, was published in 1963. It states (page 6) that the cutting of sagebrush (the method used by the plaintiffs) "costs from $7 to $8 per acre." Defendant did not show the method of adjusting this cost to develop the $10 to $30 per acre testified to by the witness or how it was applied to the plaintiffs' lands.

The testimony is undisputed that the ryegrass has consistently failed as a crop and the clearing has not proved an attraction to potential purchasers of the land. Every inference in the testimony leads to the conclusion that the effort was an experiment which proved to be an "overimprovement," adding no value whatsoever to the property. None of the land has been sold and no comparable sales were produced on which to base a value in excess of that of adjoining property.

It further appears that overassessment has resulted because eight tax lots have been classified by the assessor as Class V-c, apparently because of the attempt at dry land rye production, when the actual experience of several years prior to 1969 shows that Class VI-a is a more reasonable classification.

Evidence was introduced by the parties to show that the plaintiffs had owned all the stock in a corporation known as Portland Company, the principal assets of which consisted of land lying in the Harney Valley where the subject property is also located. All the stock of Portland Company was sold by plaintiffs to another corporation, Meadowland. The plaintiffs' witness, H. C. Vogler, Jr., testified that Meadowland had undertaken to sell small tracts "to people that want to have a place to park their trailer house. The

fellow that—the rock hound, the fellow that retires and wants to go hunting. The guy that wants to get away from the city. The fellow that just wants to own something. That's the typical fellows they're approaching, I think." Other testimony indicated that some small tracts, adjacent to highways, were thus sold for $45 per acre and the assessor has relied upon this, in part, in appraising the subject property, some of which is adjacent to Highway 20 or Highway 78 or is on a county road. There was further testimony to show that the market for this type of sale has become saturated. Although the assessor appraised some of plaintiffs' property situated adjacent to highways at $45 per acre, identical contiguous lands were assessed at a much smaller amount (at $14, $21, $18, and $36 per acre).

On cross-examination of the defendant's principal witness, it appeared that the sales offered by the defendant as "comparables" were not useful in establishing true cash value because each sale, in one or more respects, failed to come within the definition of a comparable sale by a willing seller to a willing buyer. See the Department of Revenue's regulation, R308.-205-(A), which defines "market value" as the basis for true cash value; it "shall be taken to mean the amount of money or money's worth for which property may be exchanged within a reasonable period of time under conditions where both parties to the exchange are able, willing and reasonably well-informed." Accordingly, to be acceptable, all sales must be verified as to the criteria listed.

Considering the testimony in this case, it is apropos to remark here that every estimate of market value is a prediction and uncertainty is inherent in every prediction. The discovery of comparables is

difficult and virtually every adjustment for differences in property is largely subjective. Unless the most rigorous standards are maintained by the appraiser, the approach to value quickly loses its validity. The too facile application of rules of thumb (e.g., ryegrass has been seeded, ergo the property is classified V-c; the cost of brush cutting is $10 to $30 an acre) without consideration of the reason for the rule, dilutes the persuasive quality of the testimony. It is recognized, of course, that complete equality and uniformity must remain an ideal. *Portland Van & Storage Co. v. Hoss*, 139 Or 434, 447 9 P2d 122 (1932). Nevertheless, relative uniformity is essential. *Thomas v. State Tax Commission*, 3 OTR 333, 337 (1968). What is "relative uniformity" is also a matter of degree but, in the present case, in the view of the court, it has not been achieved.

There is no evidence to show that this is a case where the plaintiffs' lands have been correctly assessed and their neighbors have been underassessed, as in *Robinson et ux. v. State Tax Com.*, 216 Or 532, 339 P2d 432 (1959). It is more akin to the situation in *Penn Phillips Lands v. Tax Com.*, 247 Or 380, 430 P2d 349 (1967), where a particular attribute was given unjustified weight by the appraiser in the opinion of the court. There it was the classification of land as homesites; here it is the futile effort to raise ryegrass.

On the basis of the record, the court concludes that the presumption of correctness favoring the assessor has been overcome and that the plaintiffs have sustained the burden of proof by a preponderance of the evidence, requiring a reduction in the assessed value of the subject property as of January 1, 1969. In

determining the values to be used, the court has assumed that none of the property should be valued at a higher figure than that asserted by the assessor and none should be valued at a lower figure than that requested by the plaintiffs. Weight must also be given to the value added to property by fencing and by its position on established roads. Where property lying adjacent to the subject property is virtually identical in its attributes, there is no reason to give a higher value than the highest given to the adjacent lands. With these precepts in mind, the court finds the value of each tax lot as follows:

| Tax Lot | Acres | Value Per Acre | Total Value |
|---|---|---|---|
| 147-46 | 150.94 | $40 | $ 6,037.60 |
| 147-43-1 | 80 | 40 | 3,200.00 |
| 126-20 | 60 | 30 | 1,800.00 |
| 149-6-1 | 154.57 | 20 | 3,091.40 |
| 149-22 | 79.89 | 36 | 2,876.04 |
| 149-1-2 | 532.20 | 24 | 12,772.80 |
| 149-70 | 160 | 24 | 3,840.00 |
| 149-77A | 76.11 | 36 | 2,739.96 |
| 149-77A-1 | 76.12 | 36 | 2,740.32 |
| 172-10-1 | 318.37 | 20 | 6,367.40 |
| 172-11 | 160 | 20 | 3,200.00 |
| 171-3-12 | 193.11 | 20 | 3,862.20 |
| 171-3-21 | 80 | 30 | 2,400.00 |
| 174-41 | 158.38 | 20 | 3,167.60 |

| Total | | | $58,095.32 |