## MEADOWLAND RANCHES, INC. *v.*
## DEPARTMENT OF REVENUE

Wendell Gronso and Stephen D. Finlayson, Attorneys at Law, Burns, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered January 26, 1976.

CARLISLE B. ROBERTS, Judge.

Plaintiff appeals from defendant's Orders No. VL 74-201, dated June 7, 1974, relating to the property tax year 1973-1974, and No. VL 75-277, dated May 7, 1975, relating to the property tax year 1974-1975, which affirmed assessments to plaintiff's property as of

January 1, 1973, and 1974. The two cases were consolidated for trial.

The plaintiff contends that the real property assessments were made in a discriminatory manner in violation of the state and federal Constitutions and seeks a reduction of assessed values for the years in question.

Plaintiff corporation, Meadowland Ranches, Inc., purchased about 40,000 acres of Harney County land in 1963. The land is located from 8 to 25 miles east of Burns in an area commonly known as Harney Valley. It is all basically unimproved sagebrush land. At the time of this appeal, plaintiff corporation was the record owner of 20,000 acres, more or less, all of which is involved in this cause. The amount of land varied slightly during the two tax years but the variance is unimportant to the issues in the case.[1] Most of the land has been sold by unrecorded contract to out-of-state purchasers. The contracts of sale generally are for ten years at six percent interest.

The record in the case is a difficult one from which to seek answers. However, the cases turn on the assessment procedures in the Harney County Assessor's office. These are vital to an understanding of the issues.

Pursuant to ORS 308.215(1) and with some reference to the Department of Revenue's rule thereunder, OAR 150-308.215(1), the assessor has classified the property of Harney County. The greater part of the

---

[1] The Harney County Assessor's Account numbers are: M195-12 4-1; M171-20-B 4-1; M196-1 4-1; M148-4 1-2; M149-1 1-2; M195-9 1-3; M149-66 1-2; M149-67 1-2; M171-3 1-2; M171-7 1-2; M171-1 1-3; M194-15-1 1-3; M194-32 4-1; M195-12-8-1 4-1; M195-12-11 4-1; M196-12-1 4-1; M197-36 4-1; M223-9 4-1; M223-9-1 4-1; M196-41 18-1; M149-125 18-2; M171-48 18-2; M171-52 18-2; M172-5 18-2; M172-62 18-2; M172-70 18-2; M172-78 18-2; M196-7 18-2.

real property in the county is classed as either 5-3-1, relating to farm use property, or 5-3-3, farm use property assessed at farm use values. The 5-3-1 property is broken down into seven classes, I through VII, with some classes being further subdivided; *i.e.,* VIIa, VIIb. As a result of the homogeneity of the land in the county, each acre of a given class, say VIIa, is assigned a uniform value for property tax assessment purposes each year, with adjustment for size of the parcel. The appraisal process therefore consists of determining the values for each class of land, and making a physical appraisal of the property being assessed to determine to which class and plat size it belongs.

The property owned by plaintiff corporation is not under the 5-3-1 farm use class, but is classed as 8-0-0 "recreational-speculative" land. There was some unsubstantiated testimony from a member of the county assessor's staff that there were 186,965 acres of 8-0-0 class land in the county. The court takes judicial notice that this is a very small percentage of the total land area in Harney County, which contains approximately 6,518,400 acres.

The 8-0-0 class land is further subdivided into seven different "subdivisions."[2] The assessor's employees entitled these "areas" as "Meadowland Area,"[3] plus Areas I through VI. These seven areas represent seven physical areas, not land types, of Harney County, of which the Meadowland Area is the smallest. The property of plaintiff corporation is in the Meadowland Area and represents the great bulk of the 8-0-0 class land.

---

[2] On some of the materials provided by the assessor's office, Areas VI and VII were combined into VI, producing only six different subdivisions.

[3] Other references were to "Meadowland Ranches and adjacent areas." In later years, the "Meadowland" designation was discontinued in favor of "Area I."

The 8-0-0 class of property was first placed in the assessment roll in the 1971-1972 tax year. Mr. Joe Tiller, then an appraiser for Harney County, testified as to the reasons the 8-0-0 class was adopted.

"Well, it became evident in '71 that we were going to have to do something to alleviate the problem with the ratio, countywide, on agricultural lands because of the—the subdivisions were being —becoming quite prominent and the ratio study that we were using with these in it was raising havoc with the ability to put producing lands on at their market value. Therefore, we had to institute a new class which we identified as 8-0-0 class and separate these from the normal, prior [previously classed?] agricultural lands in order to have a separate ratio study for this type of property."

Mr. Tiller's statement is significant. This, with other testimony, has led the court to infer that the assessor comprehends a category of potentially productive but inactive agricultural land which was bought and sold at a "normal" price and a second category of identical land which was traded at "abnormal" prices.

The basis for classifying property as either 8-0-0 class recreational-speculative land or 5-3-1 class farm use land was the major area of dispute at trial. There was evidence that the classification was based on how the property was used, not on the ownership; i.e., property purchased by any individual, whether a retired individual from Southern California or a rancher in Harney County, was classed as 5-3-1 property if it was used for ranching or other farm uses. It was classed as 8-0-0 property if it was used for recreational purposes or was not being used in any way.[4]

---

[4] If not in use for any purpose, the assessor's staff assumed the land was held for speculative gain, hence the "recreational-speculative" designation. The defendant's rule, OAR 150-308.215 (1), does not use "speculation" anywhere in its classification system, even for the 8-0-0 class property.

The testimony was also clear that, as far as anyone knew, the property owned by plaintiff corporation was not being used by anyone for recreational purposes. It was mostly vacant, unfenced, open rangeland. Cattle owned by strangers crossed over and grazed at will on subject property. It should be strongly emphasized that there is *absolutely* no difference between property owned by plaintiff corporation in the 8-0-0 category and other property that is adjacent to it and classified 5-3-1 or 5-3-3. Witness after witness, whether called by the plaintiff or the defendant, agreed that a person examining plaintiff's property could not tell by inspection whether it should be classified as farm use or "recreational-speculative" property.

The result of this classification scheme is that the assessment of such property varies as a result of an unfounded, arbitrary classification. For instance, most of the property in the Meadowland Area that is now classed as 8-0-0 would be classed as VIIa property under the 5-3-1 farm use class, which carries an assessed value of $20 per acre for the tax years in question. Thirty acres of 8-0-0 class property located in the Meadowland Area, although identical to its neighboring property assessed at $20 per acre, would be assessed at $145 per acre.[9] This anomaly is the basis of plaintiff's causes of action.

Although plaintiff did not contend that the property was overassessed, the testimony produced at trial raised grave doubts as to the validity of the assessments. It is noted that the valuation schedule for 8-0-0 class land in the Meadowland Area was based on a sales study which consisted entirely of sales of land designated as 8-0-0 class land in the Meadowland Area. As there is absolutely no difference between the so-

---

[9] This conclusion was reached by considering the testimony and examining the assessor's tables used during the years in question and submitted in evidence.

called 8-0-0 class land and the adjoining 5-3-1 class land, the sales study, at the least, should have included studies of sales of identical land located in the area classed as 5-3-1. The court suspects that the result of this bifurcated sales study was that the Meadowland Area 8-0-0 class property was probably valued too high and the adjoining and interspersed 5-3-1 class farm property was probably valued too low.

A second area of general weakness in the assessor's work was that the sales used to determine the values of the Meadowland Area 8-0-0 class property were not based on purchases by informed buyers. The preponderance of the testimony proved that most of the property was purchased by out-of-state buyers, sight unseen. There is, of course, no conclusive presumption that the failure to inspect property being purchased means that the buyer is not informed, but the inference is clearly there and was not in any way overcome by testimony from the assessor's office staff or other witnesses. The fact that the values of some of this property in Harney County did increase, in subsequent years, and that some of the purchasers apparently enjoyed a profitable acquisition, does not mean that the buyers were informed at the time of their purchase.

Additionally, there was no testimony to counteract the testimony that low-interest-rate sales contracts were either recognized or adjusted in the determination of true *cash* value.

The use of the 8-0-0 class for "recreational-speculative" purposes certainly must be a misnomer. There was no recreational use shown as to plaintiff's land whatsoever. The classification scheme set forth in the department's rule, OAR 150-308.215(1), does not even mention a speculative use.[6] The highest and best use

---

[6] If the market activity between knowledgable buyers and

of subject property appears to be rangeland, and it should have been so classified and appraised with other rangeland.

Plaintiff's objection to the assessment was not that the land was given too high an appraisal, but that it was the subject of discrimination. The basis of plaintiff's contention lies in a previously used example: two identical 30-acre tracts of property, both VIIa quality, but one being classed as 8-0-0 and one classed as 5-3-1 property, would have values of $145 per acre for the 8-0-0 class property and only $20 per acre for the 5-3-1 class property. The court agrees that this is discriminatory.

In *Penn Phillips Lands v. Tax Com.*, 247 Or 380, 430 P2d 349 (1967), an assessment was struck down because the plaintiff's property was classified by the assessor as homesites, and therefore overassessed in relation to identical adjoining property. The court held that the existence of identical properties bearing different valuations constituted a prima facie case of unconstitutional discrimination. The court said, 247 Or at 385-386, 430 P2d at 352:

"The taxing authorities may not single out one taxpayer for discriminatory, or selective, enforcement of a tax law that should apply equally to all similarly situated taxpayers. Such discrimination also offends the uniformity clauses of our own constitution. Oregon Constitution, Art I, § 32, Art IX, § 1; *Reynolds Metals Co. v. State Tax Com.*, 227 Or 467, 362 P2d 705 (1961). The constitutional directive is that property actually taxed be taxed

sellers indicates speculative considerations, the appraiser must take such activity into account in appraising the subject property, but only if he can confidently show a connection. This problem involves the subjective determination of timing; *i.e.*, have the specific speculative forces impinged on subject property or does it still remain outside the orbit? *See Highway Commission v. Oswalt*, 1 Or App 449, 452, 463 P2d 602, 603 (1970) (concerning an imminent zone change).

equally. *Crawford v. Linn County,* 11 Or 482, 493, 5 P 738 (1884); and see Etter, *Municipal Tax Differentials,* 37 Or L Rev 1, 38 (1957).

"The action of the assessor in reappraising only the land of this one taxpayer, while leaving identical private land in the surrounding desert appraised at values of from $1.50 to $5.00 per acre, resulted in a systematic denial of uniformity to this taxpayer and some form of relief is clearly necessary. See *Baldwin Const. Co. v. Essex County Bd. of Taxation,* 16 NJ 329, 108 A2d 598 (1954)."

This court struck down the assessment in *Vogler v. Dept. of Revenue,* 4 OTR 334 (1971), because the assessor had given unjustified weight to a certain factor that was not reflected in the market. The property had been given a higher value because it was involved in a "futile effort to raise ryegrass."

In *Penn Phillips Lands, supra,* the assessor gave too much weight to the fact that the property had been subdivided. In *Vogler, supra,* imbalance resulted from emphasis on taxpayer's unrealized hope of raising ryegrass. In the instant case, the attribute relied on is that the property is not being used for any particular purpose; ergo, it is held for speculation. Each of the three instances described resulted in different assessments for identical adjoining properties.

In order to present a case of unconstitutional discrimination, more must be done than showing that two identical pieces of property received different assessments. It must be proved that the assessments were not "reasonably proportionate to assessed valuation of similar properties in the county, * * *." *Robinson et ux v. State Tax Com.,* 216 Or 532, 536, 339 P2d 432, 434 (1959). The facts herein so indicate. The greater part of the 25 percent of the county's 6,518,400 acres which is assessed at market value is classified as 5-3-1 farm use property which receives the

lower assessments ($20 per acre). Plaintiff corporation owns less than one percent of all the property in the county. It represents somewhat over ten percent of the 8-0-0 class property in the county, but almost all of the 8-0-0 class property in the Meadowland Area. This is not an isolated situation as in *Robinson, supra.* Plaintiff's property is receiving a higher assessment than almost all of the identical properties in the county.

Although plaintiff has shown a basis for relief, it has failed to introduce enough evidence into the record to enable the court to determine the lawful valuations of the property. It was suggested that the average property should be classed at VIIa, which is valued at $20 per acre. The court is unwilling to make a decision based on such averages. The redetermination of the tax must be made as if the property involved was 5-3-1 farm use property during the two tax years.

Opinion and Orders No. VL 74-201, dated June 7, 1974, and No. VL 75-277, dated May 7, 1975, are hereby set aside and held for naught. Plaintiff shall consult with the County Assessor of Harney County and then submit computations pursuant to Rule 26 of the rules of the Oregon Tax Court, to be accompanied by a form of decree, consistent with this decision.

Plaintiff is awarded its costs.