IN THE OREGON TAX COURT

BENSON et al
*v.*
DEPARTMENT OF REVENUE
(TC 1403)

Wayne C. Annala, Annala, Carey & Hull, Hood River, represented plaintiffs.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered January 11, 1982.

**CARLISLE B. ROBERTS, Judge.**

The plaintiffs are six corporations and 45 individuals who have carried an appeal from the Hood River County Board of Equalization to the Department of Revenue (which issued Order No. VL 80-232 on April 10, 1980) and to this court. The county assessor, as of January 1, 1979, had determined the farm-use value of "good orchard land" (GO) to be $880 per acre and "orchard land" (O), $580 per acre. These farm-use assessed valuations were applied throughout the county to approximately 15,000 acres of orchard land. The plaintiffs allege that the proper 1979-1980 assessed values were $623 per acre for GO land and $323 per acre for O land. The sole issue presented is: What percentage of the "true cash value for farm use" of an acre of land and fruit trees is properly allocated to the "bare" land?

The county assessor's total true cash value for farm use (ORS 308.370) of an acre of orchard land and the trees thereon, $1,940, is not contested.

The determination of the value of property at a given time, for any purpose, is an onerous task at best. The difficulties for assessors, appraisers and taxpayers have been augmented by the Oregon statutes relating to assessment and taxation, as is illustrated by the present case. Note the statutes and rules to be considered and obeyed:

■ ORS 308.232 sets out what was at one time the universal rule:

> "All real or personal property within each county shall be assessed at 100 percent of its true cash value."

■ ORS 308.205 adds a definition:

> "True cash value of all property, real and personal, means market value as of the assessment date [the first day of the calendar year prior to the fiscal tax year which begins on July 1]. True cash value in all cases shall be determined by methods and procedures in accordance with rules and regulations promulgated by the Department of Revenue. * * *"

■■ The Department of Revenue has promulgated a rule defining true cash value, as the statute requires. It has adopted a definition which, with slight variations, is in use throughout

the United States. See the Oregon Administrative Rules at 150-308.205(A):

"1. Definitions:

"a. Market Value as a basis for true cash value shall be taken to mean the highest price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed."

"Market value" is the key. No item for sale has intrinsic value in itself. As is often said in appraisal circles, "people make value." Sales, "under conditions where both parties to the transaction are under no undue complusion to sell or buy and are able, willing and reasonably well-informed," establish the market. The "market approach" is the preferred method for establishing "true cash value." *Portland Canning Co. v. Tax Com.,* 241 Or 109, 404 P2d 236 (1965). But if this market data approach is unavailable in a given instance, because of a lack of sales, the "cost approach" and "income approach" can be substituted. OAR 150-308.205-(A) also states: "Any one of the three approaches to value, or all of them, or a combination of approaches, may finally be used by the appraiser in making an estimate of market value, depending upon the circumstances." As was said in *Price v. Dept. of Rev.,* 7 OTR 18, 26 (1977):

"The recognition of a range or band of value within the contemplation of market value is forced by the highly subjective nature of the appraisal process, requiring judgment values of the appraiser step by step. This weakness in turn has given rise to 'accepted' approaches to value, the most typical of which are loosely described as the market data approach, the income approach, and the cost (less depreciation) approach. Each of these must be used with care and understanding * * *.

"Because of these inherent difficulties, courts also recognize that taxation is necessarily a practical problem and complete equality and uniformity must remain an ideal. Relative, not absolute, uniformity is required by the constitutional provisions. *Robinson et ux v. State Tax Com.,* 216 Or 532, 536, 339 P2d 432, 434-435 (1959); *Portland Van & Storage Co. v. Hoss,* 139 Or 434, 446-447, 9 P2d 122, 127 (1932); *Thomas v. Commission,* 3 OTR 333, 337 (1968).

"* * * * *

"All of the foregoing considerations must be made consistent, so far as is humanly possible, with the basic purpose of appraisal and assessment of property: that all taxpayers share in proportion to their assessments, the support of their government and the protection and services afforded to their property and to themselves, and that none bears an added or unfair burden by reason of other taxpayers not paying their just share."

Everyone recognizes that the appraisal of property cannot be reduced to a science at this state in man's progress from savagery to civilization. So much depends upon the appraiser's training, intelligence and experience that there are those who describe his practices as an "art." But a great deal of subjectivity is involved and the further the appraiser is required by the situation to depart from actual sales and to use substitute approaches, the more tenuous the result.

■ In recent years, state legislatures have rendered the problems of the appraisal of real property for tax purposes even more difficult by departing from the rule of true cash value through the enactment of special legislation. The present suit is an example of the additional complexity given thereby to the usual appraisal problems. In the present case, the departure from true cash value as a standard for establishing the fact of value is set out in ORS 308.345 which provides for the valuation of the plaintiffs' orchard lands "to reflect value for farm use only." Property which has been in farm use and will be continued in bona fide farm use will ordinarily be sold, in an arm's-length transaction, at "market value" but must be assessed at some substantially lower value in order to carry out the legislative intent "that bona fide [farm] properties shall be assessed at a value that is exclusive of values attributable to urban influences or speculative purchases." ORS 308.345(1).

In the present suit, not only is there a departure from market value of the land, required by ORS 308.345, but a further complication for the assessor is created by ORS 307.320:

"The value of any deciduous trees, * * * growing upon agricultural land devoted to agricultural purposes, shall be

exempt from assessment and taxation and shall not be deemed real property under the provisions of ORS 307.010."[1]

The parties in the present suit accept the county assessor's total value of the "bare land" and trees in a given acre of orchard property in Hood River County but contend that the county assessor erred in allocating 42 percent of the total value to the land (upon which tax is imposed) and 58 percent to the deciduous trees (which are exempt from taxation). The plaintiffs argue that the land should be allocated 32 percent of the total value, leaving 68 percent to the trees.

A study of the testimony and exhibits proves that the parties' witnesses worked diligently to gather data to support their respective positions. However, while both plaintiffs and defendant presented a substantial body of background material, neither produced convincing evidence as to the propriety or impropriety of the county assessor's allocations of value to land and to the orchard trees.

The situation presented here would challenge the skills of any veteran expert real property appraiser.

Improved property is normally bargained for and bought and sold as a unit.[2] Nevertheless, ORS 308.215(1)(e) and (1)(f) arbitrarily require that an allocation be made on the assessor's roll, placing in one column the value of the land (excluding the value of all buildings, structures, improvements and timber therefrom) and, in an adjacent column, inserting the value of all buildings, structures and improvements. This requirement may not be too difficult or inaccurate if, at the given assessment date, the appraiser discovers a new house

---

[1] The quoted statute, ORS 307.320, was enacted in consequence of *State ex rel Med. Pear Co. v. Fowler,* 207 Or 182, 295 P2d 167 (1956). That case arose on the discovery by the former State Tax Commission that, although county assessors of Oregon were required to include deciduous fruit-bearing trees as part of the value of the real property on their assessment and tax rolls, at least one county had traditionally omitted the value of the fruit trees (using a partial value of improved land only, the formula for which is not revealed by a reading of the cited case). The problem of equalizing assessments through all the counties of Oregon was solved legislatively by creating an exemption for decidous trees.

[2] Perhaps because of the difficulties in allocation, experience demonstrates that buyers and sellers deal with a transaction as a package. They may haggle about details (e.g., "you must reduce your asking price by $1,000 because of need for immediate roof repairs"), but allocations, when made, are arbitrarily, unilaterally contrived for balance sheet and tax purposes (and, in due time, by the county assessor).

has just been constructed on a vacant lot and the whole property sold at the market price (i.e., arm's-length transaction, willing buyer and seller, etc.). The actual cost of the new building can readily be obtained and deducted from the total sales price, leaving the residual value as the market value of the land. By degrees, this simple example can be made more difficult until we reach the situation in this suit, where the expert appraiser for defendant, after diligent search, found no Hood River County sales of orchard lands where any allocation was obvious; no sales of bare orchard land through which a residual value could be established for fruit trees and orchard land; no leases of orchard land which would justify an income approach. (Additionally, the undisputed testimony of defendant's expert witness indicated that his work was rendered more difficult because, under Hood River County's zoning provisions, the bulk if the county's orchard land is lawfully available for a buyer principally interested in purchasing a residential site, thus adding an additional element affecting value.) The plaintiffs agreed to these conclusions.

Some Hood River leases were found by defendant's expert, carefully explored and rejected as "leases of convenience" of "leases executed chiefly for residential purposes."

The county's fee appraiser also studied orchard leases in Jackson County and in the State of Washington but gained little from his efforts. It may be said that, in the aggregate, he produced a scintilla of evidence which would tend to sustain the county assessor's values.

The plaintiffs agreed to all the mathematical steps taken by the county's expert witness except for his final allocation of value between land and trees. They agreed there were no market sales or market leases. Unquestionably, cost data are not useful for appraisals of mature orchards. Thus plaintiffs had no rational basis for making a prima facie case to prove the asserted allocation. They contented themselves with seeking to refute the defendant's arguments with some effect. The statute, ORS 308.345, was made to appear unworkable and this conclusion, in the court's view, merits reconsideration by the legislature (unless some other county assessor demonstrates a proven formula which is a guide, even

under the Hood River County conditions).[3] No one in this suit produced an acceptable formula for allocating the value of orchard land between the bare land and the trees.

The court's duty is clear, in these circumstances. ORS 305.427 provides:

"In all proceedings before the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. *The burden of proof shall fall upon the party seeking affirmative relief * * *.*" (Emphasis supplied.)

The plaintiffs sought affirmative relief but failed to sustain the burden. The court affirms the department's Order No. VL 80-232 (and commends the reading of the opinion therein as an aid to the understanding of the court's decision). Defendant is entitled to its costs and disbursements.

---

[3] ORS 307.320 was enacted in 1957 and the same need for a "formula" must have been experienced over the years by county assessors in Umatilla, Wasco, Washington, Jackson and other counties with orchard land. However, regrettably, no testimony was presented respecting the methods used by other involved county assessors.