Argued March 16, decided March 24, 1914.

COOKE v. PORTLAND.*

(139 Pac. 1095.)

**Municipal Corporations—Boundaries—Alteration.**

1. An enlargement of the territory of a city amounts to an amendment of its charter.

**Municipal Corporations — Alteration of Boundaries — Constitutional Provisions.**

2. Since the amendment in 1906 of Constitution, Article XI, Section 2, taking from the legislature and giving to the voters of each municipality the power to amend its charter, the former procedure for amendment of a charter having for its source the authority of the legislative assembly fell.

[As to validity of statute creating new county or other municipality only on ratification by voters within the territory affected, see note in Ann. Cas. 1914C, 626.]

**Municipal Corporations—Alteration of Boundaries—Statutory Provisions.**

3. Section 3209, L. O. L., providing by general law how the boundaries of a city may be enlarged, and requiring an election and notice by publication and posting both in the city and in the territory to be added, is not repealed by implication by the charter of the City of

---

*As to the power of the legislature to annex territory to municipalities, see note in 27 L. R. A. 737.    REPORTER.

Portland (Act Jan. 23, 1903), providing a procedure for the annexation of territory, and requiring the submission of the question to the voters in the territory to be annexed; the term "submission" being defined by reference to the provisions of the general law.

**Municipal Corporations—Alteration of Boundaries—Action of City Council.**

4. The provision of city charter of Portland, Section 17, for the amendment of the charter by the city council on the adoption by voters in territory proposed to be annexed of the proposition for annexation, cannot be regarded as providing for a purely ministerial act of declaring the result of the election, since such a procedure would be invalid as a delegation of legislative power to the voters of the annexed territory, and as a violation of Article XI, Section 2, of the Constitution, as amended, giving the voters of the city the sole power to amend its charter.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by O. F. Cooke against the City of Portland.    The facts are as follows:

In Multnomah County, at the times mentioned in the pleadings herein, there were two rural election precincts known as Sylvan No. 178 and Mount Zion No. 179.    On August 19, 1910, a petition was presented to the common council of the City of Portland said to be signed by 15 per cent of the qualified voters residing in a part, but not in the whole, of each of those precincts, asking that those portions of their territory named be annexed to the municipality of the City of Portland. On September 14, 1910, the council of the City of Portland passed a resolution whereby it resolved:

"That the matter of the annexation of the territory described in the foregoing petition be and hereby is submitted to the qualified legal voters residing in the territory so designated, at the next general election held therein, said election to be held on the 8th day of November, 1910, for their adoption or rejection; and each elector who shall vote upon said proposed amendment shall vote yes, or no, in answer to the question: 'Shall additional territory in sections 5, 6, 7, and 8, T. 1 S., R. 1 E. of W. M., be annexed to the City of Portland, Multnomah County, Oregon, and shall Sec-

tion 12 of the charter of the City of Portland be amended accordingly?' ''

The question was not in any manner submitted to the legal voters of the city. No notice of the submission of the question was given to the voters in the outlying territory involved. The only notice of the election was the one issued by the county clerk to the effect that a general election would be held in the precincts for state, district, county and precinct officers, and that 32 public measures would be voted upon, without mentioning the nature of those measures, or otherwise describing them. The ballot used at the election containing the names of candidates, a sample of which is in evidence, had noted thereon 32 public measures for the consideration of the electors; but none of them in any way affected the matter in suit here. At the election there were in the hands of the judges of election the regular ballot provided by the county authorities for the general state elections held on that date, but they contained nothing whatever alluding to the acquisition of new territory by the City of Portland. Besides these, there were smaller ballots, presumably furnished by the city authorities, wh ch contained only the question of the annexation me ioned. No data besides the description on this las med ballot were placed in the hands of the judges oi election whereby they could determine whether or not the electors offering to vote resided in the territory to be annexed. At the election all voters presenting themselves were furnished with both ballots, and the votes of all on the question were received indiscriminately without reference to whether the voter resided within or without the proposed addition.

The plaintiff, a resident and taxpayer within the territory in question, appearing for himself and 29 other like individuals, alleged in detail in his complaint

that of which the foregoing is a summary; stated that the bonded indebtedness of the City of Portland and the yearly expenses of maintaining that municipality are very great, and that, if the annexation were made, he and the others in like situation would be greatly damaged, in that they would be compelled to pay additional taxes without corresponding benefit; and prayed the court to restrain the officials of the city from admitting the proposed territory within its limits, and from amending the section of the charter describing the boundary, that the election mentioned be declared null and void, and for general relief. Without alleging new matter, the answer traverses the complaint in important particulars. From a decree dismissing the suit the plaintiff has appealed.     REVERSED.

For appellant there was a brief and an oral argument by *Mr. H. B. Dickinson.*

For respondents there was a brief over the names of *Mr. W. A. Davis, Mr. Frank S. Grant,* City Attorney, and *Mr. John F. Cahalin,* with an oral argument by *Mr. Davis.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The proceedings in question are said to have been carried on under the act of the legislative assembly approved January 23, 1903, entitled "An act to incorporate the City of Portland, Multnomah County, State of Oregon, and to provide a charter therefor, and to repeal all acts or parts of acts in conflict therewith."

Section 12 of that statute defines the domain of the City of Portland by metes and bounds, with reference to legal subdivisions of the public surveys. Article IV of the act establishes a procedure for the annexation of territory. The initial step of that process is a

petition filed in the office of the city auditor, signed by 15 per cent of the qualified voters of the outlying territory, describing it, defining its boundaries, and praying for the addition of the same to the city. After consideration, the council by a two-thirds vote may pass a resolution 30 days before the next general election providing for the submission of the question to the qualified voters residing in the territory to be annexed. When the proposed addition includes a part, but not the whole, of any voting precinct, the County Clerk of Multnomah County is required to "furnish a sufficient number of ballots to supply the voters of such precinct who reside within the territory so to be annexed, upon which shall be printed the question of the annexation of such territory, and shall supply for the voters of such precinct who do not reside within said territory ballots upon which such question shall not appear." The city auditor must furnish to the judges of the election a plat and description of the territory to be annexed showing the portion thereof included within the limits of each election precinct. The judges of the election are to ascertain the residence of each voter applying for a ballot and furnish only to electors residing within the proposed annexation the ballot containing that question.

In part, Section 16 of the act says:

"In case a majority of the qualified voters residing in such territory and voting on said question vote in favor of such annexation such territory shall on the first day of July next following said election be and become a part of the City of Portland."

Section 17 reads thus:

"The council shall thereupon by resolution so alter and amend Section 12 of this charter and the boundaries of said city as therein described, and set out as to include such annexed territory within the boundaries of said city, and said Section 12 as so amended shall

be a part of this charter and be in full force and effect."

In 1906, Article XI, Section 2, of the state Constitution was amended to read thus:

"Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon."

This section was further amended by the plebiscite of November 8, 1910, but not in any manner affecting the question here involved.

1. That a change in the boundaries of the city involves an amendment to its charter is taught in the very language of the act itself. The council is empowered by Section 17, *supra,* to amend Section 12 of the charter. This is a legislative construction of the act involved. It is manifest that a description of the boundaries of a city is an essential element of its fundamental law. It is impossible to conceive of a city charter which would not contain provisions of that kind limiting its territorial jurisdiction. We hold, therefore, that an enlargement of the territory of a city is in its true nature an amendment of its charter.

2. Before the amendment of Article XI, Section 2, the legislative assembly had the authority to amend particular charters. It could not, however, delegate to anyone this legislative power. The amendment referred to inaugurated a new system whereby the authority of the legislative assembly was taken away and a new *régime* substituted. With the ademption of the

power of the legislature over charters by special legislation fell the procedure having for its source the authority of the legislative assembly: *McKeon* v. *City of Portland,* 61 Or. 385, 390 (122 Pac. 291).

3. Ten years prior to the enactment of the charter of 1903, the legislative assembly by general law, found in Chapter 1, Title 26, L. O. L., established a procedure for the incorporation of cities and towns for the amalgamation of independent municipalities and for the addition of new territory to such corporations. Section 3209, L. O. L., part of that act, prescribes how the boundaries of a city may be enlarged. In general terms it requires that notice shall be given of the election by publication in a newspaper of general circulation, both in the corporation and in the proposed addition for four weeks prior to the election, and also by posting notices thereof in four public places both in the city and in the new territory. Conceding the authority of the charter act of 1903, on this point, it did not operate to repeal the general municipal corporation statute in the part relating to notices of election. Repeals by implication are not favored; and, construing both acts to stand even on the hypothesis that the charter was not affected by the constitutional provision mentioned, it is plain that notice must be given in the manner provided by the general statutes as a jurisdictional prerequisite to the holding of an election on the question involved. Looking at Section 15 of the city charter, we find that the council may "pass a resolution providing for the submission of the question of the annexation of such territory." For a definition of the term "submission" we must advert to the general law on that question. It was proposed by the procedure involved to impose additional burdens of government upon the inhabitants of the new territory. Just powers for such a government depend

upon the consent of the governed, to be ascertained
in the manner provided by law. The procedure al-
ready described, and which was adopted on the oc-
casion mentioned, does not square with the general
law upon that subject in that no notice was given of
the proposed election. The opportunity to be heard,
which in its very nature involves previous notice, is
essentially jurisdictional in its character where it is
proposed to take the property of an individual or to
visit upon it additional burdens. Without this, the
action of the city council was analogous to taking the
property involved without due process of law.

4. It was contended at the argument by the counsel
for the defendants, in effect that the action of the city
council prescribed in Section 17 of the charter was
purely ministerial, and in substance a mere declaration
of the result of the election. In our judgment, how-
ever, Sections 15, 16, and 17 of the charter must be
read together, with the result that the vote of the
rural electors and the action of the council, if otherwise
valid, are both integral and necessary ingredients of
the process of annexing new territory. The inevitable
consequence of defendants' argument would be to hold
that the vote of people residing wholly without the
territorial limits of the city could amend the charter
of the municipality, for all the electoral action taken
was that of the rural voters. At any time in the
history of our state government this would have been
a delegation of legislative authority to the voters men-
tioned. Since the amendment of Article XI, Section
2, it would be a usurpation of the prerogative of the
legal voters of the municipality, and in either event
would be a nullity. In pursuance of its general legis-
lative authority, the law-making body of 1893 had pre-
scribed a procedure for the constitution of new
municipalities for the amalgamation of existing cities

and towns, and for the assimilation of new territory involving in all cases the separate independent action of both parties to the new civic aggregation. Viewed in connection with the new Article XI, Section 2, of the Constitution, the rights of those within and those without the city are both thus subserved. Neither can be forced upon the other. As said by Mr. Justice McBride in *Thurber* v. *McMinnville,* 63 Or. 410, 416 (128 Pac. 43, 45):

"The legislature, by Section 3209, L. O. L., * * provided a plain, easy method by which an incorporated city could acquire new territory. By virtue of this act, which has not been repealed, and which does not conflict with the sections of the Constitution thereafter adopted, it was provided that the question of acquiring such territory might, by the action of the city council of the municipality, be submitted to the voters within and without the municipality, voting separately; and, if a majority of each locality voted in favor of annexation, the change in boundary should be made."

In brief, as against the plaintiff and others in like situation, the election was void because no notice of the same was given. On the part of the city it was void because the legal voters thereof had no opportunity to express their wishes on the subject. As to both parties it was void because, worked out to its final analysis, it amounted to an amendment of the charter of the City of Portland by those living entirely without its boundaries. The other questions suggested thus become unimportant.

The decree of the Circuit Court is reversed, and one entered here in accordance with the prayer of the complaint.          REVERSED: DECREE RENDERED.

Mr. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.