Argued January 21, affirmed in part; reversed and remanded in
part with instructions March 30, 1972

# CITY OF IDANHA, *Respondent, v.* CONSUMERS POWER, INC., *Appellant.*

495 P2d 294

*Robert Mix,* Corvallis, argued the cause and filed the briefs for appellant.

*Scott McArthur,* Monmouth, argued the cause for respondent. With him on the brief were McArthur & Horner, Monmouth.

*James M. Mattis,* Eugene, argued the cause and filed the brief amicus curiae for League of Oregon Cities.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

City of Idanha (hereinafter referred to as Idanha) brought suit against defendant, an Oregon cooperative corporation, to obtain a decree to compel defendant to comply with city Ordinance No. 6, which requires all public utilities supplying or selling electrical energy within the city to obtain a license yearly.

The defendant appeals from the decree of the trial court enjoining defendant from further violation of the ordinance and ordering defendant to apply forthwith for a license, to render to plaintiff an accounting of its gross revenues from the effective date of the ordinance, and to pay plaintiff the fee prescribed, namely, three per cent of the gross revenues earned within the city.

The questions presented for decision are:

    I.  Is Idanha a lawfully incorporated city?

    II.  Was Idanha's home rule charter legally adopted?

III. Is the validity of a home rule charter dependent on the inclusion therein of a description of the city's boundaries?

IV. Did the general powers clause in plaintiff's charter authorize the enactment of Ordinance No. 6?

V. Can Idanha prohibit the defendant from billing back to defendant's customers within Idanha the tax imposed by the ordinance?

VI. Does the definition of "public utility" in the subject ordinance (which excludes all utilities other than electrical utilities) constitute an unreasonable classification?

VII. Is the two per cent penalty imposed by section 10 of Ordinance No. 6 unconstitutional because it is unreasonable? If constitutional should it be enforced against defendant?

VIII. May Idanha charge defendant interest on the unpaid tax?

## I and II

The first two questions presented deal with the validity of Idanha's incorporation and subsequent charter enactment. Idanha's complaint alleged that it "was a municipal corporation of the State of Oregon duly and lawfully organized and chartered under the laws of the State of Oregon." Defendant denied this. The only evidence introduced on this question was a certified copy of Idanha's Proclamation of Incorporation and a copy of the charter, bearing the certificate of the librarian of the Supreme Court. The defendant contends that the incorporation and charter must

be declared void because of Idanha's failure to prove that the preliminary proceedings necessary to a valid charter enactment or incorporation were regularly performed. We disagree.

■ Under ORS 41.360(15) there is a disputable presumption that "official duty has been regularly performed." Included within this general category is the presumption that where a final act can be done only after the performance of prior acts, proof of the final act raises a presumption that the prior proceedings were regularly performed. *Barclay v. Bd. of Education,* 244 Or 294, 417 P2d 986 (1966); *School District No. 17 v. Powell,* 203 Or 168, 189, 279 P2d 492 (1955); *State v. Deschutes County,* 88 Or 661, 173 P 158 (1918); *State ex rel v. Port of Tillamook,* 62 Or 332, 124 P 637, Ann Cas 1914C, 483 (1912). This presumption is applicable to the present case, since the incorporation and charter enactment were both final acts which could be validly accomplished only after the regular performance of required preliminary proceedings. Idanha's proof of the final acts established a prima facie case that the preliminary proceedings had been regularly performed and, therefore, that the incorporation and charter were valid.

We are bound to find in accordance with this presumption unless sufficient evidence is introduced to overcome the presumption. Defendant relies solely upon the fact that the records of the enactments did not affirmatively show that the prerequisites of the enactments had been regularly performed. As there is no requirement, statutory or otherwise, that the record affirmatively show that these steps have been performed, the mere silence of the record is not evidence of noncompliance.

■ We hold that Idanha was validly incorporated and that its charter was lawfully enacted. *Greenberg v. Lee et al,* 196 Or 157, 183-84, 248 P2d 324, 35 ALR2d 567 (1952); *Young v. Galloway,* 177 Or 617, 164 P2d 427 (1945); *Kershaw et al v. City of Willamina et al,* 119 Or 543, 250 P 235 (1926); *Emmons v. Southern Pac. Co.,* 97 Or 263, 191 P 333 (1920); *Portland v. Yick,* 44 Or 439, 75 P 706, 102 Am St R 633 (1904).

## III

The validity of Idanha's charter is further attacked on the ground that the charter does not contain a legally sufficient description of the city's boundaries and that such deficiency is fatal to the validity of the charter. The charter provides:

> "The city shall include all territory encompassed by its boundaries as they now exist or hereafter are modified by voters, by the council, or by any other agency with legal power to modify them * * *." Section 3.

It is clear that no municipal corporation may validly exist without boundaries sufficiently defined so as to render it possible to determine the precise area included within, 2 McQuillin, Municipal Corporations 287, § 7.04 (3d ed 1966). However, Idanha's boundaries are not in doubt. A metes and bounds description of the original boundaries of Idanha is included in its 1949 Proclamation of Incorporation. The only change in these boundaries was an expansion pursuant to a 1968 annexation. A metes and bounds description of the territory annexed is included in the 1968 Proclamation of Annexation. Certified copies of each of these proclamations were admitted into evidence.

■ Defendant has not cited, nor have we found any

authority for the proposition that a home rule charter
without a sufficient description of the city's boundaries
is void. He relies on *Cooke v. Portland,* 69 Or 572, 577,
139 P 1095 (1914), wherein it was said:

> "* * * It is manifest that a description of the
> boundaries of a city is an essential element of its
> fundamental law. It is impossible to conceive of a
> city charter which would not contain provisions
> of that kind limiting its territorial jurisdiction
> * * * ."

We do not feel that this statement is dispositive as to
home rule charters, as the charters predominant at
the time *Cooke* was decided were legislative charters.
These charters were granted by special acts of the
legislature. They created the city and in the same in-
strument specifically defined its powers. While it is
necessary that an instrument which confers corporate
existence upon a city describe its boundaries, it does
not follow from this that a home rule charter must
also describe the city's boundaries. The corporate
existence of a city enacting a home rule charter can-
not be dependent on that charter, since a city must be
validly incorporated to enact such a charter. Under
Oregon Constitution, Art XI, § 2, only the legal voters
of a city may enact a home rule charter. We see no
legitimate reason why all of the authority of a city
must be contained in the charter. *See, Portland Base-
ball Club v. Portland,* 142 Or 13, 18 P2d 811 (1933);
*Grants Pass v. Rogue River P. S. Corp.,* 87 Or 637, 171
P 400 (1918).

■ Assuming without deciding that the reference
made in Idanha's charter to the boundaries was
legally insufficient, we hold that this exclusion did not
affect the validity of the charter.

## IV

Idanha's powers are derived from its home rule charter enacted in 1965 pursuant to Oregon Constitution, Art XI, § 2, and Art IV, § 1a, which at that time, respectively, provided:

"* * * The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *." Art XI, § 2.

"* * * The initiative and referendum powers reserved to the people by this Constitution, are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts * * *." Art IV, § 1a (now Art IV, § 1(5)).

The grant made by Oregon Constitution, Art XI, § 2, has been construed by the courts to make available to cities all of the powers which the legislature could validly confer upon them. *Davidson Baking Co. v. Jenkins et al,* 216 Or 51, 337 P2d 352 (1959); *Wilson v. City of Medford et al,* 107 Or 624, 215 P 184 (1923); *State v. Port of Astoria,* 79 Or 1, 154 P 399 (1916); *Robertson v. Portland,* 77 Or 121, 149 P 545 (1915).

■■ In *Wilson v. City of Medford et al,* supra at 645, the court said:

"The whole sum of intramural power is set at large by the state Constitution (Article IV, Section 1-a and Article XI, Section 2), and the legal voters of any city may, by amending their existing charter or by the enactment of a new charter, reach out and take either all or only a part of that whole sum of power * * *."

It is clear from this that a city's charter may authorize it to exercise all powers properly available to munici-

pal government. The question is to what extent may these powers be authorized by a general grant of power. Idanha's charter provides:

> "The city shall have all the powers which the constitution, statutes and common law of the United States and this state expressly grant or allow municipalities, as fully as though this charter specifically enumerated each of those powers."

In *Davidson Baking Co. v. Jenkins et al,* supra, the validity of an ordinance providing for the granting of licenses for the purpose of regulation or of raising revenues was upheld. It was contended there that Oceanlake had no authority to enact the ordinance. Oceanlake had incorporated under Oregon Laws 1941, ch 453 (codified as ORS 221.020) but had not enacted a home rule charter. The court found that the power to enact the ordinance had been conferred upon Oceanlake by ORS 221.410, a general grant of power providing:

> "(1) Except as limited by express provision or necessary implication of general law, a city may take all action necessary or convenient for the government of its local affairs." ORS 221.410(1).

In construing this decision in *Schmidt v. Masters,* 7 Or App 421, 429, 490 P2d 1029 (1971), Sup Ct *review denied* (1972), we said that in *Davidson Baking Co. v. Jenkins et al,* supra:

> "* * * [T]he Oregon Supreme Court settled any preexisting inconsistency in its opinions about whether a city may, under a general grant of power, have authority to do that which is not preempted by state law and is otherwise within the general ambit of authority of the particular city * * *."

We find that the general grant of powers in the Idanha charter conferred upon that city the sum total of intramural powers available to municipalities in Oregon.

■■ While there may be some merit to defendant's contention that Ordinance No. 6 is not a true "licensing ordinance" because it bears none of the traditional earmarks of a "licensing ordinance," *see, Portland v. Portland Ry., L. & P. Co.,* 80 Or 271, 306, 156 P 1058 (1916), we deem this irrelevant to the question of whether Idanha had the authority to enact the ordinance. The enactment was either a business and occupation license fee or a business and occupation tax. A city, with proper charter authority, may levy a business or occupation tax based solely on its taxing power, *City of Beaverton v. Harris,* 3 Or App 541, 474 P2d 771 (1970), as well as a business or occupation license fee based on its police power alone or in combination with the taxing power. *Garbade and Boynton v. City of Portland,* 188 Or 158, 214 P2d 1000 (1950). We hold that the general grant of powers in Idanha's charter authorized the enactment of Ordinance No. 6, regardless of whether it is characterized as a license fee or an occupation tax.

## V

■■ Sections 5 and 6 of Ordinance No. 6 provide that the amount of license fee to be paid the city under this ordinance shall not be shown as a separate item, computation or addition to the customer's bill, nor shall the amount of this fee be added to the customer's bill by any public utility for its sales, services or other charges, which are the revenues used as a basis for computation of such city license fees. Since the revenues used as a basis for computing the tax are the revenues from within the city of Idanha, these provisions prevent defendant from separately stating the amount of the tax on the bills of residents of Idanha

or passing the tax on to the residents of Idanha by increasing their rates by the amount of the tax. We find that, as applied to defendant, these provisions are beyond the power of Idanha. Even assuming *arguendo* that these provisions could be validly imposed on a business operated for profit because such business could absorb the tax by lowering its profit margin on operations within the city, defendant, a nonprofit electrical cooperative, does not have this option. Its nonprofit status necessarily requires that any increased expenses be passed on directly to its members by means of increased rates. Idanha, in the exercise of its legal powers, is limited to its territorial boundaries. *Spence v. Watson,* 182 Or 233, 186 P2d 785 (1947); *City of Athena v. Jack,* 115 Or 357, 236 P 760 (1925). It would be unquestionably invalid for Idanha to levy a tax on the distribution of electric power to members of the cooperative residing outside its boundaries. By prohibiting defendant from increasing the rates of Idanha's residents to pay this tax, they are attempting to do indirectly what they cannot do directly.

■ As section 12 of Ordinance No. 6 provides that the sections of the ordinance are severable, the invalidity of sections 5 and 6 does not affect the remainder of the ordinance. *Dodd v. Ind. Acc. Comm.,* 211 Or 99, 310 P2d 324, 311 P2d 458, 315 P2d 138 (1957).

## VI

Defendant challenges the constitutionality of Ordinance No. 6, asserting that it violates the equal protection and due process clauses of the United States and Oregon constitutions because it is applicable

solely to defendant. Ordinance No. 6 applies to "public utilities" as defined in the ordinance as amended October 8, 1968. "Public utility" is defined for purposes of the ordinance as:

"* * * Any person, corporation, association, or partnership, whether organized for profit or not, which sells, distributes or provides to others, within the corporate limits of the City, electrical energy, for which payment is received."

Defendant in essence is contending that the classification made in the ordinance is unreasonable because it does not include all utilities operating within Idanha's boundaries.

■ The courts have allowed legislative bodies to exercise a large measure of discretion in classifying trades, callings and businesses which may be subjected to special forms of taxation through an excise. *Tax Commissioners v. Jackson,* 283 US 527, 51 S Ct 540, 75 L Ed 1248, 73 ALR 1464 (1931); *Portland Van & Storage Co. v. Hoss,* 139 Or 434, 448, 9 P2d 122, 81 ALR 1136 (1932). The constitutionality of the ordinance at bar must be sustained unless it is impossible to discern any substantial difference between the occupations separately classified. *Portland Van & Storage Co. v. Hoss,* supra.

■ Defendant contends that there is no reasonable distinction between an electric utility and other utilities operating within Idanha, specifically a telephone company and a cable television company. This contention cannot be sustained. In *Philadelphia, Appellant v. Depuy,* 431 Pa 276, 244 A2d 714 (1968), it was held that separate tax treatment for gas and electric utilities was justified because of the distinct power sources involved. *Fox v. Galloway,* 174 Or 339, 357-58, 148 P2d

922 (1944), held that it was reasonable to classify the selling of merchandise by means of vending machines separately from the usual method of selling through human agency for taxation purposes. Differences in organization, management and type of business transacted were found to be sufficient to justify a classification imposing a graduated tax on the operation of mercantile establishments based on the number of stores owned in *Safeway Stores v. Portland,* 149 Or 581, 600, 42 P2d 162 (1935).

There are substantial distinctions between the services offered, business organization employed, and regulations imposed by other governmental agencies upon an electric utility as compared with a bus company, a telephone company or cable television company. Whether it is wise or expedient, based upon such difference, to classify an electric utility in a class by itself is a legislative question to be determined by the lawmakers. *Safeway Stores v. Portland,* supra at 599.

## VII

Defendant assails the validity of the penalty clause which provides for an additional license fee of two per cent of gross revenues received by the public utility during the time it operates without a license. The challenge is based solely on defendant's assertion that where the tax levied is three per cent of gross revenues, a penalty of two per cent of gross revenues is so disproportionately large as to be unreasonable. As no additional facts are alleged as to why this specific penalty is unreasonable and oppressive, our consideration is limited to the question of whether a penalty of 66-2/3 per cent is unreasonable per se.

The amount of a penalty is within the discretion of the legislature. *Gooch et al v. Rogers et al,* 193 Or 158, 183-84, 238 P2d 274 (1951). Wide latitude must be accorded to the exercise of this discretion, within the bounds set by *Ex parte Young,* 209 US 123, 147, 28 S Ct 441, 52 L Ed 714, 13 LRA (ns) 932 (1907), wherein the court said:

> "* * * [W]hen the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights."

*Gooch et al v. Rogers et al,* supra, upheld a penalty equal to 80 per cent of the tax which was assessed for failure to pay promptly the reforestation tax. As the penalty in *Gooch* was greater than in the present case, we deem it controlling.

Defendant further contends that if the penalty is valid he should not be required to pay it as he was contesting the validity of the tax in good faith. This contention is without merit. The ordinance terms the penalty an additional license fee. Delinquency, therefore, increases the amount of the tax. The ordinance does not provide for the remission of part of the tax imposed under any circumstances. We have no inherent power to grant relief from a statutory penalty. *Gooch et al v. Rogers et al,* supra at 190.

## VIII

Finally we take up the question whether defendant may be charged interest on the unpaid tax. Al-

though the trial court imposed no interest on the delinquent tax payments, as this matter is being reviewed *de novo,* we may order that interest be paid. Defendant contends that the absence of any provision for the payment of interest in Ordinance No. 6 is conclusive of this issue. We disagree. It is true as a general proposition of law that delinquent taxes as such do not bear interest without an express provision to that effect, because taxes are not considered debts. *Livesay v. DeArmond,* 131 Or 563, 569, 284 P 166 (1930). However, ORS 82.010(1)(b)[1] provides that judgments and decrees for the payment of money bear interest at six per cent per annum from the date of entry thereof.

■ Here, the decree of the trial court ordered defendant to pay the fee prescribed. This was a decree for the payment of money and as such bears interest at a rate of six per cent per annum from the date of the decree. We hold that the fee prescribed as finally determined bears interest at the rate of six per cent per annum from December 21, 1970, the date of the decree, but not before that date. ORS 82.010. *Knudtson v. Citizens' N. B. & T. Co.,* 62 SD 71, 251 NW 810, 815 (1933).

Affirmed in part; reversed and remanded in part with instructions to modify the decree in accordance with this opinion.

---

[1] ORS 82.010(1)(b) provides:

"(1) The legal rate of interest is six percent per annum and is payable on:

"* * * * *

"(b) Judgments and decrees for the payment of money from the date of the entry thereof unless some other date is specified therein * * *.