Argued December 19, 1977; resubmitted in banc
May 8, affirmed in part; reversed in part May 14, reconsideration denied
June 19, petition
for review denied September 5, 1979

JARVILL, *Appellant,*
*v.*
CITY OF EUGENE et al, *Respondents.*
(No. 74-2507, CA 8516)

LICHTY, *Appellant,*
*v.*
CITY OF EUGENE et al, *Respondents.*
(No. 74-2508, CA 8516)

CITY OF EUGENE, *Respondent,*
*v.*
GREAT WESTERN SCHISM, INC., *Appellant.*
(No. 75-3369, CA 8516)
(cases consolidated)

594 P2d 1261

Larry R. Roloff, Eugene, argued the cause and filed the briefs for appellants.

Orval Etter, Eugene, argued the cause for respondents. With him on the briefs were Leslie M. Swanson, Jr., and Johnson, Harrang & Mercer, Eugene.

James A. Redden, Attorney General, and Ira W. Jones, Senior Assistant Attorney General, Salem, filed a brief amicus curiae on behalf of the Oregon Department of Revenue.

TANZER, J.

**TANZER, J.**

Appellants in these three consolidated cases[1] challenge a charter provision and certain ordinances of the City of Eugene. The trial court upheld them all. We hold that the trial court lacked jurisdiction over the appellants' challenges to certain provisions imposing or relating to ad valorem property taxes, and we vacate the portions of the order which relate to those provisions. In all other respects, we affirm.

The Eugene City Charter was amended in 1973 to confer upon the common council of the city the powers

> "To establish, and from time to time to change the boundaries of, a downtown development district; for purposes of public parking facilities for vehicles in the district, of public transportation in, to, and from the district, and of economic promotion and development for the district, to tax persons, property, and economic enterprise in the district; and to establish one or more agencies to assist the city in the exercise of those powers." Eugene City Charter, ch VII, § 48(70) (1973).

Pursuant to that charter provision, the council enacted a series of ordinances, establishing a Downtown Development District (District) in the central business area of the city, regulating automobile parking in the District, and imposing taxes. The objective of that legislation is to enable the city to finance and administer a program of economic development and public parking in the area. Half the revenue for the program is generated by a tax on real property in the District; the other half comes, first, from a percentage tax on gross sales and receipts of "non-professional" persons doing business in the District, and, second, from a tax at a flat rate on "professionals" in the District.

---

[1] Appellants Jarvill and Lichty are plaintiffs in declaratory judgment proceedings. Appellant Great Western Schism is defendant in an action by the City of Eugene for collection of taxes levied under some of the ordinances challenged in the declaratory judgment actions. The city's property tax and other taxing ordinances, to be discussed below, are challenged in the Jarvill and Lichty cases; in the Great Western Schism case, the city's claim relates only to the taxes other than the property tax.

[187]

The parking regulations allow free parking generally in the District, but prohibit parking at most times by persons who are employed, employ others, reside, or are guests at hotels or motels within the District while such persons are in their place of employment, residence or lodging.

Appellants contend generally that the types of taxes imposed by the city are either unlawful or beyond the city's power to impose; that the imposition of the taxes on property and businesses within the District, when property and businesses in other parts of the city are not subject to similar taxation, violates the Uniformity Clause and Privileges and Immunities Clause of the Oregon Constitution (Art I, § 32 and Art I, § 20) as well as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and that the restrictions on the use of parking facilities by persons doing business or otherwise situated in the District also deny equal protection. The appellants advance numerous other arguments, which present less substantial questions.

Because appellants raise a scattershot pattern of contentions, our initial task is to separate the wheat from the chaff, with the expectation based more on faith than experience that some wheat may be found. *Cf. Neuberger v. City of Portland,* 37 Or App 13, 19, 586 P2d 351 (1978) *rev allowed* (1979). In this case, the appellants' challenges to the city's taxes present questions—not necessarily those articulated by the appellants—which bear significantly on municipal taxing power and on the meaning of the Uniformity Clause of the Oregon Constitution. We will deal first with the appellants' challenges to the District taxation scheme, and then address other issues.

## DOWNTOWN DEVELOPMENT DISTRICT TAXATION

A. *Description of Taxation Scheme*

On July 19, 1973, the voters of Eugene approved a measure authorizing the common council to levy a "tax

on real property in the district, and not elsewhere in the city, of $129,250" in excess of the six percent limit prescribed by Art XI, § 11 of the Oregon Constitution. Pursuant to that voter authorization, the council levied an ad valorem property tax on the real property in the District.

In 1973, the city also enacted an ordinance imposing a tax of $40 quarterly on each self-employed professional doing business in the District, with an increment of $40 "for each natural person whom she or he employs," and imposing a tax of $2.50 per $1,000 of the gross retail sales and receipts of "each non-professional person * * * who engages in a business" in the District.

Each of the taxes falls exclusively on property or businesses within the District and has no application to property or businesses in other parts of the city. Appellants contend that, for that reason, each of the taxes violates the Uniformity Clause of the Oregon Constitution and the Equal Protection Clauses of the federal and state constitutions. Before the merits of those contentions can be reached, however, we note that there is a jurisdictional problem which the parties do not raise but which we nevertheless must resolve. *City of Hermiston v. ERB,* 280 Or 291, 570 P2d 663 (1977).

## B. *Did the Circuit Court have Jurisdiction?*

The legislature has given exclusive jurisdiction for tax cases arising under state law to the Tax Court. As material, ORS 305.410 provides:

"(1) Subject only to the provisions of ORS 305.445 relating to judicial review by the Supreme Court and to subsection (2) of this section, the tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state. * * *"
"* * * * *

"(3) Except as permitted under section 2, amended Article VII, Oregon Constitution, this section and

[189]

ORS 305.445, no person shall contest, in any action, suit or proceeding in the circuit court or any other court, any matter within the jurisdiction of the tax court."

The procedural statutes for the contest of local taxes laid under state law are consistent with Tax Court sole jurisdiction. ORS 294.485 provides:

"(1) Any tax levy made contrary to the provisions of ORS 294.305 to 294.520 or any other law relating to the making of tax levies shall be voidable as provided in subsection (2) of this section and ORS 310.070.

"(2) The county assessor, county court, board of county commissioners, the Department of Revenue, ·Tax Supervising and Conservation Commission or 10 interested taxpayers may appeal to the Oregon Tax Court and such appeal shall be perfected in the following manner only:

(a) Within 30 days after the notice of tax levy is filed with the county assessor, the appealing party shall file an original and two certified copies of a complaint with the clerk of the Oregon Tax Court at its principal office in Salem, Oregon. * * *"

Accordingly, under the clear terms of the relevant statutes, the circuit court could have had no jurisdiction to consider the validity of any of the city's taxes presenting questions "arising under the tax laws of this state."

■ The tax on professionals and the gross sales and receipts tax on nonprofessionals were enacted pursuant to the city's charter authority rather than under the tax laws of Oregon. *Davidson Baking Co. v. Jenkins, et al,* 216 Or 51, 337 P2d 352 (1959); *City of Idanha v. Consumers Power,* 8 Or App 551, 495 P2d 294 (1972). We therefore conclude that there was jurisdiction in the circuit court to resolve the questions relating to the validity of those taxes. *Cf. Girt et al v. Tri-Met et al,* 4 OTR 92 (1970).

■ The property taxes challenged by the appellants, however, were levied under the tax laws of this state.

[190]

Ad valorem property taxation in Oregon is comprehensively governed by state law. Or Const, Art IX, § 1; ORS chs 307-312. We therefore hold that the circuit court had no jurisdiction over the challenges to the District property taxes, and the portion of the judgment upholding the property taxes must be vacated.[2]

This jurisdictional holding is arguably subject to question because of the superficial similarity of this case to *Horner's Market v. Tri-County Trans.*, 2 Or App 288, 467 P2d 671 *rev den* 256 Or 124, 471 P2d 798 (1970).[3] There, the plaintiffs challenged the legality of the formation of the Transportation District as well as the validity of a tax the Tri-Met board had imposed pursuant to the same act of the legislature which authorized Tri-Met's creation. Tri-Met contended that the circuit court and this court lacked jurisdiction because the case involved the validity of a tax authorized by state law. In rejecting that contention, we stated:

> "Several of the assignments of error relate to the constitutionality of the Act (ch 643) under which the District was formed; thus, the suit is broader in scope than an attack upon the tax alone, for it challenges the existence of the District. ORS 305.410 cannot be

---

[2] The city argues in its brief

"* * * that on April 14, 1975, the City Council converted the tax on real property to a tax on the ownership of real property, the conversion applying not only prospectively, but also retroactively to the beginning of the Downtown Development District program."

The last complaint challenging the validity of District property taxes in these cases was filed in October, 1974, six months before the city took the action to which its brief refers. Neither the fact that the "conversion" of the tax from an ad valorem real property tax to a tax on ownership occurred nor the fact that the change was retroactive is in the record. The city appends the April, 1975, "converting" ordinance as an exhibit to its brief, but it is not in evidence. We cannot consider it and we limit our review to the taxes levied for the 1973-1975 fiscal years.

It is therefore unnecessary for us to determine whether an ad valorem tax on ownership of real property is any less a tax arising under the laws of this state than is an ad valorem tax on real property. Whether that slender distinction creates either a jurisdictional or a substantive difference is not for us to decide in this case.

[3] *Horner's Market* was overruled in part in *Multnomah County v. Mittleman*, 275 Or 545, 552 P2d 242 (1976), but the holdings of *Horner's Market* which are relevant here were unaffected.

construed to give the Tax Court original jurisdiction in such a matter, although the suit challenges a tax. The circuit court, being Oregon's court of original general jurisdiction, was, therefore, the proper tribunal in which to commence this suit * * *." 2 Or App at 293.

That passage points out the essential difference in rationale which makes the *Horner's Market* exception to exclusive Tax Court jurisdiction inapplicable to this case. The challenge in *Horner's Market* was to the creation and existence of the taxing district. The taxes were contended to be unlawful primarily because the taxing district that imposed them was itself unlawful. The underlying issue in that case was the validity of the taxing district itself, a proper subject for the invocation of equity jurisdiction in circuit court. If the challenge to the taxing district was resolved for petitioners, the taxes imposed by it necessarily fell. Thus, although tax law issues were also raised, the validity of the taxes was preliminarily and primarily a consequential issue cognizable after equity jurisdiction had been assumed.

In this case, unlike *Horner's Market,* there is no challenge to the validity of the taxing authority, the city. The City of Eugene has not created a separate political entity; the Downtown Development District is not a political subdivision and taxing authority like Tri-Met. It is simply an area in which certain ordinances apply. Plaintiffs' challenge is to a list of ordinances, some of which impose taxes and some of which regulate conduct. The challenge to the ordinances is not that the taxing authority is unlawful, but that the tax and regulatory ordinances are unlawful because the ordinances themselves purportedly violate state and federal law. The rationale of *Horner's Market* that "Equity, having taken jurisdiction, will decide all matters properly determinable in the suit,"[4]

---

[4] The reference to equity jurisdiction may have been misleading. ORS 305.410(1) regulates jurisdiction by subject matter. Expansive rules of equity jurisdiction are not relevant where jurisdiction is controlled by subject matter without regard to law/equity distinctions.

[192]

2 Or App at 293, does not apply to expand jurisdiction to those ordinances on the list which impose taxes under state law. Those ordinances are severable. Unlike *Horner's Market,* their validity is not dependent upon the resolution of non-tax issues of organic law which underlie all the ordinances. Hence, the equitable clean-up doctrine does not apply to transfer to the circuit court what would otherwise be the exclusive jurisdiction of the Tax Court over these taxing ordinances.

## C. *Validity of District Tax on Professionals and District Gross Sales and Receipts Tax*

■ Appellants' principal arguments against the District tax on professionals and the tax on gross sales and receipts of nonprofessionals is that those taxes violate the Equal Protection Clauses of the United States and Oregon Constitutions (US Const, 14th Amend; Or Const, Art I, § 20), and the Uniformity Clause of the Oregon Constitution, (Art I, § 32). Article I, § 20 of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

The section has generally been construed as being substantively identical to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See, e.g., Tharalson v. State ex rel Dept. of Rev.,* 281 Or 9, 573 P2d 298 (1978).

The twofold thrust of appellants' equal protection argument is that the taxes arbitrarily discriminate against persons doing business within the District versus other citizens of Eugene, and that the taxes are discriminatory among those taxed in that different taxes fall on different persons within the District and impose different burdens which are unrelated to benefits. In their Uniformity Clause argument, the appellants repeat the same points and emphasize that the District taxes violate Art I, § 32 because they fall only

[193]

on persons and property within the District rather than applying throughout the city, and therefore entail a "geographical classification."

The Supreme Courts of Oregon and the United States have repeatedly held that a classification of subjects for taxation is not violative of equal protection if there is a rational basis for it, and that a rational basis will be found if there is any conceivable state of facts which will support the classification. The Oregon Supreme Court enunciated a test of the widest possible latitude and deference for resolving equal protection challenges to tax legislation in *Garbade and Boynton v. City of Portland,* 188 Or 158, 214 P2d 1000 (1950),[5] where it stated:

> "The contention made by plaintiffs that the tax imposed * * * is not uniform but is discriminatory * * * is answered adversely to their contention in *Carmichael v. Southern Coal Co.,* 301 U. S. 495, 81 L. Ed. 1245, 57 S. Ct. 868, which is one of the leading cases on the subject. The court there said:

> '* * * It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. (Citing cases.) This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. (Citing many cases.)

> 'Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. (Citing cases.)

> 'This restriction upon the judicial function, in passing on the constitutionality of statutes, is not

---

[5] As with *Horner's Market,* a particular holding of *Garbade,* not relevant in this case, was overruled by the Supreme Court in *Multnomah County v. Mittleman, supra.*

artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.'

"* * * * *

"The uniformity exacted in the imposition of an excise tax is geographical, not intrinsic. Under the equal protection clauses of the state and federal constitutions the state is not confined 'to a formula of rigid uniformity in framing measures of taxation.' It 'may tax some kinds of property at one rate, and others at another, and exempt others altogether', and it 'may lay an excise on the operations of a particular kind of business, and exempt some other kind of business closely akin thereto.' *Steward Machine Co. v. Davis,* supra (301 U.S., at pp. 583, 584), and the cases therein cited. The above enunciated rules are applicable to municipalities." 188 Or 190-91, 192.

To the same effect, *see, e.g., Lehnhausen v. Lake Shore Auto Parts Co.,* 410 US 356, 93 S Ct 1001, 35 L Ed 2d 351 (1973); *Allied Stores of Ohio, v. Bowers,* 358 US 522, 79 S Ct 437, 3 L Ed 2d 480 (1959); *Huckaba v. Johnson,* 281 Or 23, 573 P2d 305 (1978); *Horner's Market v. Tri-County Trans., supra; Smith et al v. Columbia County et al,* 216 Or 662, 341 P2d 540 (1959) *appeal dismissed* 362 US 215 (1960); *Wittenberg et al v. Mutton et al,* 203 Or 438, 280 P2d 359 (1955); *Safeway Stores v. Portland,* 149 Or 581, 42 P2d 162 (1935); and *Standard Lbr. Co. v. Pierce et al.,* 112 Or 314, 228 P 812 (1924).

Tested against the foregoing principles, the tax differentiations between the flat rate tax on professionals and the gross receipts tax on nonprofessionals

within the District satisfies equal protection requirements.

■■ As noted in *Garbade,* the similar but more difficult question is whether the city's taxes violate the Oregon constitutional requirement of territorial uniformity. Article I, § 32 of the Oregon Constitution provides:

> "* * * [A]ll taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

The Oregon Supreme Court has strongly suggested, albeit in dicta, that any geographical classification of subjects for taxation within the territorial limits of a taxing body is proscribed by Art I, § 32 whether or not there is a rational basis for that geographical classification. *See State ex rel. v. Malheur County Court,* 185 Or 392, 411, 203 P2d 305 (1949); *Standard Lbr. Co. v. Pierce et al., supra,* 112 Or at 335-36; and *Yamhill County v. Foster,* 53 Or 124, 130, 99 P 286 (1909). *See also* 16 McQuillin, Municipal Corporations, § 44.21 (1972).

Although these taxes fall upon persons or property within a definable geographical area, comprising less than all of the city's territory, the persons subject to the District taxes share more than a common geographical boundary. They are also likely to share common conditions of transportation, difficulty of access, scarcity of parking, density, degeneration of physical plant, loss of consumer patronage, esthetic depreciation, concentration of polluting agents, declining value and other conditions of modern life which characterize the downtown core area of many cities in Oregon and elsewhere. It is the economic and physical factors of contemporary urban life, not a boundary, which provide the rational basis for the taxes at issue. The constitutional question, therefore, is whether the selective imposition of a municipal tax for rational nongeographic purposes is invalid if a geographic boundary is drawn around the location of persons and businesses subject to the tax.

[196]

First we note that this situation is not unique. The law provides analogous instances of differential tax treatment of geographically identifiable land which shares nongeographic characteristics. For example, agricultural land is required to be bounded in exclusive farm use zones for land use purposes, ORS 308.370 et seq., and the land which is bounded within the zones is treated differently for property tax purposes than similar property outside the zones. The different tax treatment is based upon an economic classification; the boundary is simply an administrative means of identifying the land which is most likely to share the economic characteristics upon which the tax differentiation is based.[6] It is not conceivable that a classification based upon shared economic, *i.e.,* agricultural, characteristics is constitutionally impermissible because a geographic line is drawn around the property which is likely to share those characteristics.

The relevant language of Art I, § 32 provides that taxation shall be uniform *"on the same class of subjects* within the territorial limits of the authority levying the tax." The first phrase, which we italicized, recognizes the power of municipal bodies to classify, a power which we have already observed to be extremely broad. The nonitalicized phrase does not require absolute territorial uniformity, for that would prohibit any classification whatever within the territory. Rather, it requires uniformity of treatment within the class throughout the territory. The obvious purpose of the phrase is to prevent the majority from shifting a heavier portion of the tax burden to a minority by tax-rate gerrymandering. Looking to both phrases of

---

[6] Similar situations might exist regarding historical or conservation areas or lands which adjoin physical phenomena such as rivers, lakes or scenic vantage points where differential tax treatment may be used to offset use restrictions or to otherwise promote public purposes associated with such historical, physical or esthetic conditions. In each of these analogous examples, classification upon economic, historical, esthetic or physical bases would probably not be stricken solely because the lands likely to share the characteristics upon which the classification is based are geographically identifiable.

[197]

the provision, it would appear that a classification for any lawful purpose would not be prohibited simply because it had cartographic effect, but that a classification based upon cartographic divisions by which a majority taxes a minority would be barred.

This conclusion is consistent with *Wittenberg et al v. Mutton et al, supra,* in which the Supreme Court held that equal protection was not denied by an occupation tax which was imposed at differential rates on local merchants and out-of-town merchants making deliveries within the city. Although the persons challenging the tax in that case did not attack it on Uniformity Clause grounds, the tax in *Wittenberg* was as much or as little a geographical one as the taxes here; there is no meaningful distinction, in determining whether a tax is geographically classified, between one which falls on everyone within a circle, as here, and one which falls on everyone outside a circle, as in *Wittenberg.* We decline to hold that the Uniformity Clause of the Oregon Constitution invalidates a tax which falls upon a rationally based nongeographic class simply because, in addition to that nongeographic classification, the incidence of the tax can also be located on a map.[7]

Appellants also argue that the City did not have the power to impose the District taxes. That argument is defeated by the decision of the Supreme Court in *Davidson Baking Co. v. Jenkins, et al,* 216 Or 51, 337 P2d 352 (1959), and the decision of this court in *City of Idanha v. Consumers Power,* 8 Or App 551, 495 P2d 294 (1972). In those cases, it was held that a general grant of powers in a city charter, like that contained in

---

[7] The analysis of the uniformity requirement in this opinion is based entirely upon the constitutional provision, Art I, § 32. We are aware of no statutory provision which would make any other uniformity requirements applicable to Eugene's professional or gross sales and receipts taxes. ORS 310.100 provides in pertinent part:

"Each tax levied by any municipal corporation, taxing district or political subdivision shall apply to all the taxable property therein, as shown by the assessment roll last compiled by the assessor. * * *"

However, ORS 310.100 applies only to ad valorem property taxes.

[198]

the Eugene Charter, carries with it the power to impose revenue taxes.

As noted above, appellants make a number of arguments, in addition to their equal protection and uniformity contentions, against the District tax scheme. Some of these additional arguments are implicitly answered adversely to appellants in the foregoing discussion. The remaining arguments the appellants make against the taxes have either been answered adversely to them in numerous earlier cases, or do not warrant discussion.

## RESTRICTIONS ON PARKING

■ Appellants assert that the City's restrictions upon parking by persons employed or lodged within the District are a denial of equal protection. As in the case of tax classifications, regulatory classifications which have a rational basis and bear a rational relationship to a legitimate governmental interest are valid. *School Dist. No. 12 v. Wasco County,* 270 Or 622, 629-30, 529 P2d 387 (1974); *Wittenberg et al v. Mutton et al, supra.* The standard of judicial review of such classifications is for minimal rationality. *Clackamas County v. Ague,* 27 Or App 515, 518, 556 P2d 1386 (1976) *rev den* 1977).

■ Rational bases for the parking programs and their attendant classifications are apparent. The free-parking program promotes revitalization of the central business district by encouraging consumers to use downtown facilities. A strategy of the program is to attract customers and clients who might not otherwise come downtown by providing free parking for them. The parking prohibitions are a reasonable means of preventing employees, employers, residents and hotel or motel guests within the District from regularly occupying free parking spaces to the exclusion of consumers and clients and thus defeating the strategy of the program. The barred class may be expected to be attracted downtown by employment or lodging requirements, *i.e.,* by conditions other than ease of

parking. Moreover, people who drive to work tend to park all day daily, whereas consumers tend to use parking space for less than all day everyday. Although many rational bases for the distinctions may readily be conceived, this obvious rationale is sufficient to demonstrate that the equal protection challenge is without substance. The restriction is a valid exercise of police power for a legitimate public purpose.

### OTHER CONTENTIONS OF APPELLANTS

Appellants argue that the City had no authority to establish the District. We disagree. Authority was established by the charter amendment quoted early in this opinion. The power of the City to act pursuant to its charter in organizing its internal affairs and its governmental structure is conferred by Art XI, § 2, of the Oregon Constitution, and has often been expressly recognized by the Oregon appellate courts, most recently in *LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204, 284 Or 173, 586 P2d 765 (1978).

Appellants also contend that the expenditures of the City for the District are for other than public purposes and that they violate Art XI, § 9, of the Oregon Constitution. We consider that the expenditures for the District program are manifestly for a public purpose and that appellants' argument is refuted by the Supreme Court's decision in *Carruthers v. Port of Astoria,* 249 Or 329, 438 P2d 725 (1968).

Appellants raise many other contentions with negligible substance (*e.g.,* the parking restrictions interfere with the constitutional right to free interstate travel; the reporting requirements require self-incrimination) which do not warrant public discussion.

### CONCLUSION

We reverse that portion of the order relating to the District property tax. We affirm the trial court in all other respects.

Affirmed in part; reversed in part.

[200]

**BUTTLER, J.,** dissenting.

Even though the majority makes a valiant effort to save a presumably desirable civic project, I must dissent because I can see no legal basis for avoiding the clear mandate of Art I, § 32, Oregon Constitution, which provides:

> "* * * All taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

The majority attempts to inject the rational basis test, which is valid for purposes of testing a classification under the Equal Protection Clause (Or Const, Art I, § 20; US Const, Amend XIV), into Art I, § 32, Oregon Constitution (40 Or App at 197). Doing so, however, does not dispense with the requirement that taxation shall be uniform "within the territorial limits of the authority levying the tax." Here, the city is the taxing authority, but these taxes are not on every professional, nonprofessional and property owner in the city, but only on those who do business or own property within a defined subterritory.

I agree with the majority's statement with respect to the requirement of territorial uniformity:

> "* * * The obvious purpose of the phrase is to prevent the majority from shifting a heavier portion of the tax burden to a minority by tax rate gerrymandering. * * * " 40 Or App at 197.

However, it seems clear to me that the effect of the taxes here involved is to do just that—a majority of the city residents have imposed a heavier tax burden on the minority within the subterritory. The fact that there is a rational basis for defining the subterritory is irrelevant under the constitutional provision. I would, therefore, reverse.

In addition, it is at least questionable whether the ad valorem tax imposed on real property in the subterritory by the original ordinance was a tax "arising under" state law (and therefore only to be challenged in the tax court), or whether the tax is

[201]

imposed under the authority of the city charter. I am inclined to think it is the latter and may be challenged in the circuit court. In any event, the amended ordinance taxing the ownership of real property is not such a tax on real property. There is a valid distinction between the two, and the distinction makes a difference.

The fact that the tax on ownership of real property is measured by the value as shown on the tax assessor's rolls does not make it a real property tax. The burden of the tax is not on the property, but on the owner; it may be collected out of any assets of the owner, unlike a real property tax, which is a lien against the property assessed, and may be collected only out of that property; it does not become a lien automatically, as does the real property tax, and the property may be transferred free of it prior to the entry of a judgment against the owner.

For those reasons, I would include the original real property tax and the later tax on ownership of real property along with the other taxes in deciding that the tax scheme adopted by the city must fail under Art I, § 32, Oregon Constitution.

Therefore, I respectfully dissent.

**JOSEPH, J.,** dissenting.

I join in so much of Judge Buttler's dissent as would hold the tax scheme of the City of Eugene to violate (patently) the Uniformity Clause. Also, I am more certain than he that the subject taxes do *not* arise under the state's tax laws and that the majority is in error in its jurisdictional holding. Because any tax measured by the value of property is a property tax, I disagree with the rest of the dissent. Finally, I note that the majority virtually ignores the violations of equal protection in a tax scheme that taxes specific persons and denies them all direct benefits of the program financed by the taxes. The taxes that stimu-

lated the American Revolution were less objectionable than that.

GILLETTE, J., joins in this dissent.