CA A44848, A44849 and A44850 were argued and submitted May 2, CA A45837, A46545, A46546 and A46547 were argued and submitted July 25; affirmed October 5, reconsideration denied November 25, petition for review denied December 20, 1988 (307 Or 245); motion for reconsideration allowed, petition for review allowed March 7, 1989 (307 Or 514)
See later issue Oregon Reports

DONALDSON et al,
*Petitioners,*

*v.*

LANE COUNTY LOCAL GOVERNMENT
BOUNDARY COMMISSION,
*Respondent,*

*and*

CITY OF EUGENE,
*Intervenor-Respondent.*

(LGBC 863, 864, 865; CA A44848 (Control), A44849, A44850)
(LGBC 871; CA A45837)
(LGBC 873, 874, 875; CA A46545 (Control), A46546, A46547)
(Cases Consolidated)

761 P2d 1349

George E. Birnie, Portland, argued the causes and filed the briefs for petitioners.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the causes for respondent Lane County Local Government Boundary Commission. With him on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Timothy J. Sercombe, Eugene, argued the causes for intervenor-respondent City of Eugene. With him on the briefs was Harrang, Long, Watkinson & Arnold, P.C., Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioners have filed separate petitions for review of seven orders of the Lane County Local Government Boundary Commission (commission) approving the annexation to the City of Eugene (City) of portions of an unincorporated area known as Santa Clara.[1] The petitions were consolidated into three groups for purposes of briefing and oral argument and, because the issues presented are substantially the same, we have consolidated them for the purpose of this opinion.

■ City makes several preliminary arguments. It contends, first, that the petitions for review were not timely filed or properly served. ORS 199.461(4) provides, in part:

"Except as provided in ORS 183.315(1), any person interested in a boundary change may petition for judicial review of the order under ORS 183.482."

ORS 183.482(1) provides:

"Jurisdiction for judicial review of contested cases is conferred upon the Court of Appeals. Proceedings for review shall be instituted by filing a petition in the Court of Appeals. The petition shall be filed within 60 days only following the date the order upon which the petition is based is served unless otherwise provided by statute."

ORS 199.461(5) and (6) are the only provisions dealing with "service" of commission orders.[2] They provide, respectively:

"(5)  Immediately after the effective date of a final order entered under subsection (4) of this section and a proclamation declaring a minor boundary change approved if any is entered under ORS 199.505(3), the commission shall file a copy of the order and proclamation, if any, with the Secretary of State, the Department of Revenue, the assessor and the county clerk of each county in which the affected territory, city or district is located, and the clerk of the affected city or district. If the commission disapproves a minor boundary change, it shall send a copy of the final order to the person

---

[1] The issues raised in the petitions are identical, except that in A46545, A46546 and A46547 petitioners raise questions concerning the constitutionality of the annexation process, and in A44848, A44849, A44850 and A45837 they raise questions concerning the constitutionality of ORS 199.534, the annexation statute enacted in 1987. Or Laws 1987, ch 818, § 3.

[2] The commission is not subject to the provisions of ORS 183.470. ORS 183.315(1).

who actually filed the petition and to the affected city or district.

"(6) Immediately after the effective date of a final order on an application under ORS 199.464, the commission shall file a copy of the order with the applicant."

The record in each case shows that the commission filed its orders immediately after their effective dates, in accordance with ORS 199.461(5) and (6), and that, within 60 days thereafter, petitioners served on the commission and on all of those who had attended the hearings, including representatives of City, copies of the petitions for review. Contrary to City's contention, we conclude that the time for seeking review of the orders runs from the date when they are filed as provided in ORS 199.461(5) and (6) and not from the date when they are adopted. *See Ludwick v. Yamhill County,* 72 Or App 224, 696 P2d 536, *rev den* 299 Or 443 (1985). Accordingly, we hold that the petitions were timely and were properly served.

■    City contends that petitioners do not have standing to challenge the annexation orders. They reside in an unincorporated area that is not within the area annexed by City but is part of an area known as Santa Clara. They object to the annexations on the ground that Santa Clara is a "proposed city" and, therefore, not subject to annexation by another city. ORS 199.462(2)(b); ORS 199.415(6).[3] In determining standing to bring these petitions, the question is not whether petitioners are entitled to the relief that they seek, but whether they are entitled to an adjudication. *See Eckles v. State of Oregon,* 306 Or 380, 383, 760 P2d 846 (1988). We need not, therefore, at this point, address whether Santa Clara is, as petitioners contend, a proposed city. ORS 199.461(4) provides

---

[3] ORS 199.462(2)(b) provides, in part:

"(2) Subject to any provision to the contrary in the principal Act of the affected district or city and subject to the process of transfer of territory:

"* * * * *

"(b) Territory within a city may not be included within or annexed to another city * * *."

ORS 199.415 provides, in part:

"As used in ORS 199.410 to 199.519, unless the context requires otherwise:

"* * * * *

"(6) 'City' includes proposed city."

that "any person interested in a boundary change" may petition for judicial review. For the purpose of determining standing only, we assume, as petitioners allege, that they reside in a proposed city that has been partially annexed by City. Taken as true, the petitions show that petitioners' interests are directly affected by the annexation orders and that, therefore, they have standing to challenge them. *See City of East St. Louis v. Touchette,* 14 Ill 2d 243, 150 NE2d 178 (1958).[4]

City contends, in A44848, A44849, A44850 and A45837 only, that the petitions do not raise a justiciable controversy, because the parcels were legislatively annexed to City by Oregon Laws 1987, chapter 818, section 3, now codified as ORS 199.534, which provides:

> "Notwithstanding any other provision of this chapter or ORS chapter 222, territory annexed or transferred to a city or district by a minor boundary change approved by a boundary commission's final order adopted after January 1, 1985, but before July 18, 1987, shall be in the annexing city or district by operation of ORS 198.855, 199.490, 199.531, 199.534, 222.120 and 222.170 to 222.177 commencing upon the effective date of the boundary commission's final order."

Under that section, City contends, the orders of annexation, which were adopted before July 18, 1987, were ratified legislatively irrespective of any defects, and the petitions are therefore moot.

Petitioners contend that ORS 199.534 was intended to apply only to certain annexations to the City of Portland. *See Mid-County Future Alter. v. Metro. Area LGBC,* 304 Or 89, 742 P2d 47 (1987). They also challenge the constitutionality of ORS 199.534 on the ground that it legislatively annexes land to City and therefore constitutes an amendment of the Eugene City Charter, in violation of the Oregon Constitution, Article XI, section 2. They also contend that the statute violates the principle of separation of powers and Article III, section 3, by invading the exclusive jurisdiction of the Supreme Court. In

---

[4] Contrary to petitioners' contention, they were not "parties" to the administrative proceeding and do not have standing on that ground. ORS 183.310. Additionally, because their petitions show that they are persons "interested in the boundary change," ORS 199.462(4), they need not file an affidavit under ORS 183.482(2) showing how they were "adversely affected or aggrieved by the agency order."

*Mid-County Future Alter. v. Metro. Area LGBC, supra,* the Supreme Court declined to consider the validity of the statute, because the proceeding before it "was not the proper vehicle to address the issue of the constitutionality of" ORS 199.534. Here, the issue is squarely raised in response to an argument that the statute is applicable and, if it is necessary to our determination, we may decide the question. Therefore, this proceeding is not moot. However, the petitions can be disposed of without addressing the constitutional questions, and we therefore do not decide them. *State ex rel Johnson v. Circuit Court,* 114 Or 6, 9, 233 P 563, 234 P 262 (1925); *South State Inv. Co. v. Brigum,* 43 Or App 273, 276, 602 P2d 1084, *aff'd* 289 Or 109, 611 P2d 305 (1980).

The record relevant to the issues raised by the petitions is scant. At the commission's hearing in each case, at least one petitioner appeared and testified that on April 18, 1984, a petition for incorporation was filed with the county clerk initiating the process of incorporation of the area known as Santa Clara. That was the only evidence offered concerning the status of the purported petition for incorporation. Petitioners offered no documentation to support their testimony. The executive director of the commission testified that there was no petition currently before the commission seeking incorporation of the Santa Clara area. Respondents are willing to concede, for the purpose of argument, that petitioners may have filed "a prospective petition for incorporation with the county clerk." Indeed, that is the most that could be found even from a liberal reading of the record. Petitioners appear to agree that, aside from the collection of some signatures, that is as far as they have gone in the incorporation process. The question is whether the filing of a prospective petition is sufficient to qualify Santa Clara as a proposed city.

The formation of a city is a "major boundary change" within the jurisdiction of the commission. ORS 199.415(12). A major boundary change is "initiated by a legally sufficient petition as provided by the principal Act." ORS 199.476. The "principal Act" for the incorporation of a city is ORS chapter 221. ORS 199.415(16). The process of incorporation involves

several steps.[5] The petitioners must file a prospective petition with the county clerk, which must be accompanied by an estimate of the range of tax rates that will be required to provide the necessary services. ORS 221.031. The clerk must immediately date and stamp the "prospective petition," authorize its circulation and send two copies of the petition to the "county court." The petition is then released for circulation and for the collection of the appropriate number of signatures, after which it must be filed with the county court. ORS 221.040. If the petition is "legally sufficient,"[6] the county court must file it with the commission, ORS 199.476(1), which has 120 days to consider the proposal, during which time proceedings under ORS chapter 221 are suspended. ORS 199.476(2). If the incorporation is approved, the commission files its order approving the boundary change with the county clerk, ORS 199.461(5), and proceedings under the principal Act are resumed. *See* ORS 221.040.

■ At some point in the incorporation process, the area sought to be incorporated becomes a "proposed city" and is no longer subject to annexation by other cities. ORS 199.462(2)(b); ORS 199.415(6). Petitioners contend that that occurs when the prospective petition is filed with the county clerk. We conclude, however, from our reading of the statutes and administrative rules, that an area becomes a "proposed city" only when those seeking incorporation have filed with the county court a petition containing the proper number of verified signatures and the other materials necessary to trigger the county court's responsibility to file the petition with the commission.

When a prospective petition for incorporation is filed with the county clerk, the clerk merely stamps it and authorizes its circulation for the collection of signatures.[7] There is no time restriction on the process of collecting signatures, which

---

[5] The 1987 Legislature made significant changes in the process. Or Laws 1987, ch 882, § 12. All references are to the statutes as they existed at the times relevant to this review.

[6] "Legally sufficient" means that the petition is accompanied by a certification by the county elections officer that it contains the requisite number of verified signatures, an economic feasibility study, a filing fee, commission information form, and a map. *See* OAR 191-06-010; ORS 199.476(1); ORS 221.031.

[7] ORS 221.040 refers to the document as a "proposed" petition.

potentially could continue indefinitely. If the filing of the prospective petition were sufficient to establish a "proposed city" capable of preventing an annexation of the same area by a city, any one person would have the capacity to interfere indefinitely with the annexation process simply by filing a prospective petition for incorporation.[8] The signatures required on the incorporation petition, ORS 221.031; ORS 221.040, are evidence that local support is sufficient to justify the commencement of incorporation proceedings. ORS 221.040 (hearing); ORS 221.050 (election). Those seeking incorporation must demonstrate at least that level of local commitment before the incorporation process can take precedence over a duly initiated annexation proceeding. Until it is signed, verified and filed with the county court, the petition is, just as it is described in ORS 221.031, prospective only.[9] Because the record here shows that petitioners have filed only a prospective petition, we conclude that the areas annexed by City were not part of a proposed city and, therefore, could be annexed.

■ In three petitions only, A46545, A46546 and A46547, petitioners contend that the annexation statutes violate two provisions of the Oregon Constitution. Only the argument with regard to Article XI, section 2, merits discussion. That section provides, in part:

> "The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon * * *."

Petitioners contend that a boundary change is an amendment to the city charter which may be made only by the legal voters of the city. In support of that proposition, they cite *Cooke v. Portland,* 69 Or 572, 139 P2d 1095 (1914). There, a legislative charter described the city limits and also required that annexations be carried out by a vote of the electors. The court held

[8] A proposed petition for incorporation can be filed by one person as "chief petitioner." ORS 221.031.

[9] OAR 191-06-000(2) provides that the term "proposed" "refers to the set of documents required by the commission prior to initiating the commission procedures within the applicable statutory timeframe."

that, under those circumstances, the annexation of territory was an amendment to the charter which could be accomplished only by a vote of the electors. Contrary to petitioners' assertion, *Cooke* does not require that all municipal charters describe city boundaries and be formally amended each time those boundaries are changed. Rather, it holds that *when* a charter describes the boundaries of a city, a boundary change is an amendment to the charter. *See School District No. 35 v. Holden,* 78 Or 267, 151 P 702 (1915); *City of Idanha v. Consumers Power,* 8 Or App 551, 495 P2d 294 (1972). City's charter does not describe its territory; therefore, it need not be amended each time there is a boundary change.[10] Additionally, section 3 of the charter provides:

> "The city includes all territory encompassed by its boundaries as they exist when this revision of the charter is adopted *or as they are subsequently modified in accordance with state law.*" (Emphasis supplied.)

The charter itself provides for boundary changes in accordance with state law. We conclude that, as applied to City, the application of the boundary commission law does not violate Article XI, section 2.

Affirmed.

---

[10] The paradox of petitioners' argument, purportedly asserted in defense of home rule, is that it would *limit* municipal authority by allowing a city to choose only one method of annexation.