Argued and submitted March 18, affirmed April 17, reconsideration denied June 12, petition for review denied August 20, 1991 (312 Or 80)

MID-COUNTY FUTURE
ALTERNATIVES COMMITTEE,
Peter M. Smith and Dorothy Smith,
*Petitioners,*

*v.*

PORTLAND METROPOLITAN AREA
LOCAL GOVERNMENT
BOUNDARY COMMISSION
and City of Gresham,
*Respondents.*

MID-COUNTY FUTURE
ALTERNATIVES COMMITTEE,
Peter M. Smith and Dorothy Smith,
*Petitioners,*

*v.*

PORTLAND METROPOLITAN AREA
LOCAL GOVERNMENT
BOUNDARY COMMISSION
and City of Portland,
*Respondents.*

(2444, 2480, 2551, 2552, 2589, 2588, 2585,
2630, 2669, 2670, 2700, 2701, 2706, 2707,
2719, 2720, 2721, 2727, 2743, 2744, 2745,
2747, 2748, 2749, 2750, 2751, 2752, 2753,
2754, 2774, 2775, 2776, 2777, 2788, 2789,
2790, 2802, 2803, 2804, 2832, 2856, 2874;
CA A47426 (Control), A48436, A50239, A50240,
A60687, A60688, A60689, A61951, A62928,
A62929, A63444, A63791, A63443, A63790,
A63789, A63792, A63793, A64437, A64647,
A64648, A64649, A64650, A64651, A64652,
A64653, A64654, A64655, A64656, A64657,
A65510, A66450, A66451, A66452, A66453,
A66454, A66455, A66456, A67082, A67083,
A67084, A67085, A67960)
(Cases Consolidated)

809 P2d 1354

Gregory W. Byrne, Portland, argued the cause for petitioners. On the brief was George E. Birnie, Portland.

Michael D. Reynolds, Assistant Solicitor General, Salem, argued the cause for respondent Portland Metropolitan Area Local Government Boundary Commission. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Matthew R. Baines, Assistant City Attorney, Gresham,

argued the cause for respondent City of Gresham. With him on the brief was Thomas Sponsler, City Attorney, Gresham.

No appearance for respondent City of Portland.

Jeffrey L. Rogers, City Attorney, and Adrianne Brockman, Senior Deputy City Attorney, Portland, filed a brief *amicus curiae* for City of Portland.

Before Richardson, Presiding Judge, and Deits and Riggs, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of the boundary commission's order allowing the annexation of unincorporated territory to the City of Gresham (city).

■      The threshold question, raised by the city, is whether petitioners have standing[1] in this court. ORS 199.461(4) provides, as relevant:

> "Except as provided in ORS 183.315(1), any person interested in a boundary change may petition for judicial review of the order under ORS 183.482."

Petitioners recite in their petition for judicial review:

> "Petitioners seek the incorporation of a city which would include the territory purported to be annexed to the City of Gresham by the said final order. Unless the final order is set aside, petitioners must proceed with the incorporation without certainty as to whether the territory described in the final order is to be included in the proposed city. Peter M. Smith and Dorothy Smith were parties to this proceeding and each is a resident, an inhabitant and an elector of that certain portion of Multnomah County within the area of the proposed city. Petitioner Mid-County Future Alternative Committee appeared as a party to this proceeding through its Secretary, Dorothy Smith."

The city argues that petitioners have not established that they have the requisite "interest" to enjoy standing. They have not alleged that they are inhabitants of the territory affected by the annexation. The city concludes that, "[o]ther than their one sentence assertion stating so, there is no discussion in Petitioners' brief of their interest in forming a city which would include this annexed territory." However, the assertion in the petition is enough to establish "interest" and standing. We said in *Donaldson v. Lane County Local Govt. Bdry. Comm.,* 93 Or App 280, 283, 761 P2d 1349 (1988), *aff'd* 310 Or 168, 795 P2d 549 (1990):

> "In determining standing to bring these petitions, the question is not whether petitioners are entitled to the relief that they seek, but whether they are entitled to an adjudication."

---

[1] The term "standing" is the one that the city uses, and we will do so as well, although it may not be the most precise term that could have been selected. We understand the city's point to be that we lack jurisdiction, because petitioners cannot bring the judicial review proceeding.

We went on to say that we look to the petition to make that determination. 93 Or App at 284. The petition here does state an interest.

■ If the city's point is that residence in an affected area is essential to being "interested," it offers no authority to support that point, and the language of the statute is not compatible with that narrow a reading. The city also posits that, to demonstrate interest, a "person must have participated at the agency level and must have presented some evidence or argument relevant to the proposal." The city then notes that "Peter Smith was the only Petitioner to appear at the hearing in opposition to the annexation. His sole participation was the reading of a letter into the record."

Assuming the correctness of the city's premise that participation at the agency level is essential to standing before this court, Peter Smith *did* participate at that level. Because the claims of error and supporting arguments that the three petitioners make are the same, it is academic whether the other petitioners satisfy that criterion for standing, if it is one. *Thunderbird Motel v. City of Portland,* 40 Or App 697, 702, n 2, 704, 596 P2d 994, *rev den* 287 Or 409 (1979).

■ The city and the *amicus* City of Portland[2] also contend that being "interested" is not enough for standing and that party status or a showing of being adversely affected or aggrieved under ORS 183.482 is also necessary. We disagree. *See Donaldson v. Lane County Local Govt. Bdry. Comm., supra,* 93 Or App at 284, n 4. The *amicus* argues further:

"The potential for abuse is obvious if any person, regardless of residence or stake, could obtain judicial review of any Boundary Commission order anywhere in the state merely by appearing at a hearing and declaring interest."

That concern must be addressed to the legislature. We have jurisdiction, and we turn to the merits.

■ The annexation was initiated through the "double majority" procedure of ORS 199.490(2)(a)(B), which allows a city to adopt a resolution of annexation, without an election pursuant to ORS 199.505, after obtaining the written consent

---

[2] The City of Portland was added as a respondent after it had moved and we had allowed it to appear as an *amicus*.

of a majority of the electors and of the owners of more than half of the land in the affected territory. Petitioners contend that that procedure violates Article I, section 20, of the Oregon Constitution. Rather than risk paraphrasing, we quote at length from their brief:

"ORS 199.490(1) provides several methods by which a city may initiate an annexation. If the resulting decision of the Boundary Commission is to order annexation, such order is subject to the approval of the electors at an election. (ORS 199.505(1)). However if the city initiates the annexation by the double-majority method, the order of annexation made by the Boundary Commission is final. It is not subject to the vote of the electors in the territory regardless of whether objections were filed under the provisions of the statute (ORS 199.495).

"ORS 199.490 treats landowners differently than electors. Electors must of necessity be resident in the annexed territory. A landowner need not and may not be a resident of the territory. The statute permits a landowner to give or withhold his consent to the annexation of his land but grants no similar privilege to electors who are not landowners. The consent to annexation of their land by owners of more than a half of the land area annexed was a necessity for Gresham to proceed with the annexation. Without the double-majority there must be an election if the requisite number of persons file objections. With the double-majority there is no election, and thus the owners of a majority of the land can veto annexation merely by withholding their consent. If the City chooses the double-majority method there can be no voter remonstrance."

Petitioners then quote from *Mid-County Future Alt. v. Port. Metro. Area LGBC,* 82 Or App 193, 728 P2d 63 (1986), *modified* 83 Or App 552, 733 P2d 451, *rev dismissed* 304 Or 89, 742 P2d 47 (1987), where we held that the triple majority procedure under ORS 199.490(2)(a)(A) and ORS 199.495 violates Article I, section 20, because it enables a defined number of landowners to initiate an annexation that could be finalized without recourse to or participation by the electorate. Petitioners continue their argument, by analogy:

"The essential basis of the double-majority system is that whereas with a right of remonstrance only electors cast a ballot at an election, but with 'double-majority' without right of remonstrance the landowners can give or withhold their consent to annexation and thus in effect veto the will of the electors. The advantage of no election is still substantial

enough to be treated as a privilege under the Oregon Constitution.

"As with triple-majority, so it is with 'double-majority'. That is that the electors will not be entitled to vote at an election even if their requisite number ask for an election."

Petitioners' strained argument fails to identify any disparity of treatment between electors and landowners in the double majority procedure. The landowners can neither bring about an annexation that the electorate might oppose—as could happen under the triple majority procedure—nor unilaterally prevent an annexation that the electorate might favor. If a majority of electors consent under the double majority procedure and the required number of landowners do not, 10 percent of the electors would retain the ability to petition for an annexation under ORS 199.490(1)(b), subject to the election requirement. Similarly, the double majority procedure does not allow an annexation without an election, unless a majority of electors join the landowners in consenting to it. Petitioners contend, nevertheless, that the written consent of a majority of electors is not the equivalent of a majority vote at an election. They rely on the assertions of Peter Smith that the electoral process is preferable, because it generates an informed decision, that voter turnout at annexation elections tends to be high and that, in certain instances, a higher percentage of electors voted against annexation proposals than the percentage of electors who did *not* sign the initiating petitions. The answer to that contention is, of course, that Article I, section 20, guarantees equal participatory rights. It does not mandate a right to vote on annexations or any other particular form of participation, *see Mid-County Future Alternatives v. City of Portland,* 310 Or 152, 795 P2d 541, *cert den* ___ US ___ (1990), and it does not guarantee a particular result on an annexation proposal. Petitioners have demonstrated no violation of Article I, section 20.

Petitioners' remaining arguments either require no discussion or are adversely answered by the Supreme Court's decisions in *Donaldson v. Lane County Local Govt. Bdry. Comm., supra,* and *Mid-County Future Alternatives v. City of Portland, supra.*

· Affirmed.